


THE UNIVERSITY OF ILLINOIS AT CHICAGO

April 26, 2019

Professor Paul Schewe

Dear Professor Schewe,

The Title IX Coordinator, through the Office for Access and Equity (OAE), has completed its investigation into the August 2018 complaint of Katherine Lorenz (Reporting Party), former graduate student in the Department of Criminology, Law and Justice (CLJ), in which she alleges that you (Responding Party), Professor and Director of Graduate Studies in CLJ, violated UIC's Prohibition of Sex Discrimination, Sexual Harassment and Sexual Misconduct (Sexual Misconduct Policy)[1] when you allegedly engaged in sexual misconduct (defined in the Sexual Misconduct Policy to include sexual harassment).

## I.  Allegations

Specifically, Reporting Party alleged that Responding Party sexually harassed Reporting Party when he did the following:

1. texted Reporting Party a picture of a naked woman, and later apologized to Responding Party via text message during the Fall 2016 semester;

2. had pictures of a naked woman open on his desktop computer on one occasion while Reporting Party was standing in the doorway of Responding Party's office and could see the pictures during the Fall 2017 semester; and

3. shared with Reporting Party's partner, while at her dissertation defense party on September 20, 2017, that "there are so many women here I want to fuck" (several of the women at the party were then-current graduate students).

## II.  Summary of Information and Materials Considered

UIC takes complaints of sexual misconduct very seriously. A thorough and unbiased investigation was conducted during which OAE interviewed Reporting Party, Responding Party, and seven witnesses. Reporting Party and Responding Party both provided documents for the investigation. Both Reporting Party and Responding Party had an opportunity to review all of the evidence, including summaries of their own interviews, the witness statements and interview summaries, and the documents provided to OAE, and to provide comments and additional evidence to OAE investigators. Since one of the allegations concerns Responding Party viewing pornographic images on his University-issued desktop computer, OAE had a digital and computer forensic examination company examine this computer.

---

[1] http://oae.uic.edu/wp-content/uploads/sites/32/2018/04/2018_Spring_Comprehensive-Sexual-Misconduct-Policy-and-Procedure.pdf

**Office for Access and Equity**
809 S. Marshfield Ave., Room 717 (MC 602)
Chicago, IL 60612

Phone  (312) 996-8670
E-mail  oae@uic.edu
Web  oae.uic.edu

EXHIBIT B

Page 2 of 5 – Finding Letter (Lorenz/Schewe)

### III.    Findings

The evidentiary standard that is used to determine violations of the Sexual Misconduct Policy is preponderance of the evidence, which means that the evidence must show that it is more likely than not that the Policy has been violated.

Based upon a preponderance of the evidence collected during the investigation, including a review of Responding Party's computer, OAE finds that Responding Party's conduct, individually and in total, does not constitute a violation of the Sexual Misconduct Policy. OAE makes no findings with regard to whether Responding Party's conduct violated or was otherwise inconsistent with any other applicable policy or any other employee or faculty conduct standards or expectations.

### IV.    Basis for Findings

#### 1.  Allegation:

Responding Party texted Reporting Party a picture of a naked woman, and later apologized to her via text message during the Fall 2016 semester.

#### Determination of Fact:

Substantiated, in part. Although Reporting Party told OAE that the text was sent in 2016, evidence provided by Responding Party shows that Responding Party actually sent Reporting Party a text that included a picture of scantily clad women in September 2017. The evidence also shows that Responding Party had intended to send the text to another person but sent it to Reporting Party in error. Although Reporting Party initially stated that she did not respond to the text, the evidence shows that she did so by stating "Lol sorry I'm missing out on what looks to be such a good time!" and accepting Responding Party's apology for sending the picture to her.

#### Finding:

Not a violation. OAE finds by a preponderance of the evidence that the sending of this one image to Reporting Party does not constitute sexual harassment as defined in the Sexual Misconduct Policy.

#### 2.  Allegation:

Responding Party had pictures of a naked woman open on his desktop computer on one occasion while Reporting Party was standing in the doorway of Responding Party's office and could see the pictures during the Fall 2017 semester.

#### Determination of Fact:

Substantiated. OAE finds that it is more likely than not that Responding Party had such pictures on his computer as alleged by Reporting Party. Responding Party admits that he could have had such pictures on his computer screen but does not recall the specific incident described by Reporting Party. The evidence also shows that Responding Party's computer screens were within eyesight of anyone who walked past his office. Forensic examination of the computer also revealed pornographic images, though the forensic examination was inconclusive as to

Page 3 of 5 – Finding Letter (Lorenz/Schewe)

whether any of the downloaded pornographic images were present on the computer in November 2017.

**Finding:**

<u>Not a violation.</u> OAE finds by a preponderance of the evidence that having pictures of a naked woman open on Responding Party's desktop computer on one occasion that Reporting Party could see while standing in the doorway of his office does not constitute sexual harassment.

3. **Allegation:**

Reporting Party alleges that Responding Party shared with her partner, while at her dissertation defense party on September 20, 2017, that "there are so many women here I want to fuck" (several of the women at the party were then-current graduate students).

**Determination of Fact:**

<u>Substantiated, in part.</u> Reporting Party's partner could not confirm that this alleged comment was indeed made by Responding Party, although he informed OAE that Responding Party did make comments, in general, about what he would like to do sexually with the women around them at the bar and used foul language.

**Finding:**

<u>Not a violation.</u> OAE finds by a preponderance of the evidence that a one-time statement to a student's partner about what Responding Party would like to do to the women around them at the bar using foul language, even if the evidence supported that Responding Party made the alleged statement that "there are so many women here I want to fuck," does not constitute sexual harassment.

*Sexual Harassment*

UIC's Sexual Misconduct Policy defines sexual harassment as:

"unwelcome sexual advances, requests for sexual favors, and other physical or verbal conduct of a sexual nature when it meets any of the following:

a. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's education, living environment, employment, or participation in a University-related activity or program.

b. Submission to or rejection of such conduct by an individual is used as the basis for decisions affecting an individual's education, living environment, employment, or participation in a University-related activity or program.

c. Such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance or creating an intimidating, hostile, or offensive environment for working, learning, or living on campus."

*Analysis and Conclusion*

Having found that the three specific allegations discussed above are substantiated in whole



Page 4 of 5 – Finding Letter (Lorenz/Schewe)

or in part, we now turn to the analysis of whether, based on a preponderance of the evidence, the substantiated conduct constitutes sexual harassment as that term is defined in the Sexual Misconduct Policy. Although Reporting Party claims that the atmosphere on Responding Party's boat made her uncomfortable as did the three specific incidents described in her allegations, OAE finds based on a preponderance of the evidence that none of the conduct was tied to any suggestion, either implicit or explicit, from Responding Party that Reporting Party submit to conduct as a term of her education, employment, or participation in any University-related program or activity or that submission to or rejection of such conduct was used as the basis for decisions affecting Reporting Party's education, living environment, employment, or participation in a University-related activity or program.

OAE also finds based on a preponderance of the evidence that the conduct did not have the purpose or effect of interfering with Reporting Party's work or academic performance, as she was successful in getting funding, completing the program and getting a faculty position at another university, with Responding Party's help. OAE also finds that none of the conduct, whether viewed separately or as a whole, created an intimidating, hostile, or offensive environment for working or learning. When determining whether conduct rises to this level, we must assess whether the conduct in question is (a) offensive and whether it is also either (b) severe or (c) pervasive. The evidence shows that Reporting Party did not give Responding Party the impression that the text message or picture on the computer was unwelcome or offensive. For example, her response to the text message was to text back "Lol sorry I'm missing out on what looks to be such a good time!" Nor did the investigation reveal evidence that Reporting Party objected to or responded negatively to seeing a naked image, or images, on Responding Party's computer. Furthermore, OAE finds that none of the conduct, whether viewed separately or as a whole, was severe or pervasive given the nature of the conduct that the investigation substantiated and limited instances in which it occurred.

Thus, based on a preponderance of the evidence, OAE finds that Responding Party's conduct—either in part or as a whole—did not create an intimidating, hostile, or offensive environment and thus such conduct does not constitute sexual harassment.

Based upon a preponderance of the evidence collected during the investigation, including a review of Responding Party's computer, OAE finds that Responding Party's conduct, individually and in total, does not constitute a violation of the Sexual Misconduct Policy as sexual harassment or otherwise. OAE makes no findings with regard to whether Responding Party's conduct as described above violated or was otherwise inconsistent with any other applicable policy or any other employee or faculty conduct standards or expectations.

## V.     Next Steps

Since Responding Party is an employee, the Sexual Misconduct Policy does not provide either party with the option to appeal OAE's findings.

As a reminder, UIC prohibits retaliation against any person who reports sexual misconduct and/or who participates in a Sexual Misconduct investigation or resultant disciplinary process. Any report of retaliation—including by third parties—will be taken seriously and reviewed as a separate violation of the Policy.

Page 5 of 5 – Finding Letter (Lorenz/Schewe)

Please note that administrative leave is a departmental/college matter. This letter does not alter the status of your administrative leave.

Sincerely,

Michael Diaz
Title IX Coordinator

c:      Astrida Tantillo
        Beth Richie
        Caryn Bills
        Amy Truelove