**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN O'CALLAGHAN, VERONICA SHEPP, KATHERINE LORENZ, ANNE KIRKNER, SARAH MALONE, and MARLEE FRY | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 19-CV-6271 |
| v. | ) ) | Judge John J. Tharp |
| UNIVERSITY OF ILLINOIS AT CHICAGO, PAUL SCHEWE, MICHAEL DIAZ, AMY TRUELOVE, and JOHN/JANE DOES 1-100, | ) ) ) ) | Magistrate Judge Weisman |
| Defendants. | ) ) | |

## DEFENDANT PAUL SCHEWE'S ANSWER TO COMPLAINT

Defendant, Paul Schewe ("Schewe"), by and through his attorneys, Elvis Gonzalez, Ltd., and for his Answer to the Complaint of Plaintiffs, Erin O'Callaghan ("O'Callaghan"), Veronica Shepp ("Shepp"), Katherine Lorenz ("Lorenz"), Anne Kirkner ("Kirkner"), Sarah Malone ("Malone"), and Marlee Fry ("Fry") (collectively "Plaintiffs"), alleges as follows:

## PARTIES

1.  Plaintiff Erin O'Callaghan is a female and a resident of the state of Illinois. At all times material hereto, Plaintiff O'Callaghan was a graduate student at University of Illinois at Chicago. Plaintiff O'Callaghan is currently enrolled in the graduate program at University of Illinois at Chicago in the Criminology, Law, and Justice Department.

**ANSWER**:

Schewe admits the allegations of Paragraph 1.

2.  Plaintiff Veronica Shepp is a female and a resident of the state of Illinois. At all times material hereto, Plaintiff Shepp was a graduate student at University of Illinois at Chicago.

Plaintiff Shepp is currently enrolled in the graduate program at University of Illinois at Chicago in the Criminology, Law, and Justice Department.

**ANSWER**:

Schewe admits the allegations of Paragraph 2.

3.      Plaintiff Katherine Lorenz is a female and a resident of the state of California [sic] At all material times hereto, Plaintiff Lorenz was a graduate student at University of Illinois at Chicago.  Plaintiff Lorenz graduated with her PhD in December of 2017 from UIC's graduate program in Criminology, Law, and Justice.

**ANSWER**:

Schewe admits the allegations of Paragraph 3.

4.      Plaintiff Anne Kirkner is a female and a resident of the state of New York.  At all times material hereto, Plaintiff Kirkner was a graduate student at University of Illinois at Chicago.  Plaintiff Kirkner graduated with her PhD in May of 2019 from UIC's graduate program in Criminology, Law, and Justice.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Kirkner's current residency, or the status of her PhD completion. Schewe admits Kirkner was a female graduate student in Criminology, Law, and Justice at the University of Illinois at Chicago.

5.      Plaintiff Sarah Malone is a female and a resident of the state of Illinois.  At all times material hereto, Plaintiff Malone was a graduate student at University of Illinois at Chicago.  Plaintiff Malone is currently enrolled in the graduate program at University of Illinois at Chicago in the Criminology, Law, and Justice Department.

**<u>ANSWER</u>**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Malone's residence or enrollment status at the University of Illinois at Chicago. Schewe admits Plaintiff Malone was a female graduate student in Criminology, Law, and Justice at the University of Illinois at Chicago.

6.      Plaintiff Marlee Fry is a female and a resident of the state of California. At all times material hereto, Plaintiff Fry was a graduate student at University of Illinois at Chicago until August 2018.

**<u>ANSWER</u>**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations to Fry's residence or her enrollment status at UIC, but admits that Fry was a female graduate student at University of Illinois at Chicago.

7.      Defendant University of Illinois at Chicago is a public educational institution located in Chicago, Illinois. Defendant UIC receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

**<u>ANSWER</u>**:

Schewe admits the allegations of Paragraph 7.

8.      Defendant Paul Schewe is a male and resident of Chicago, Illinois. At all times material hereto, Defendant Schewe was a professor at UIC. At the time of the filing of this Complaint, Defendant Schewe remains a professor at UIC. At all relevant times, Defendant Schewe was an employee of a publicly-funded educational institution and was acting individually, exploiting his governmental authority and power, violating and depriving Plaintiffs of their constitutional rights.

**ANSWER**:

Schewe denies ever acting individually to exploit his governmental authority or power, or violating or depriving any Plaintiff of her constitutional rights. Schewe admits the remaining allegations of Paragraph 8.

9.    Defendant Michael Diaz was and is employed by UIC as Title IX Coordinator in UIC's Office for Access and Equity. At all relevant times, Diaz was an employee of a publicly-funded educational institution and as such was required to conduct a professional, ethical, and thorough investigation of the allegations made against Defendant Schewe by Plaintiffs.

**ANSWER**:

Schewe admits the allegations of Paragraph 9.

10.    Defendant Amy A. Truelove was employed by UIC as Deputy Title IX Coordinator in UIC's Office for Access and Equity. At all relevant times, Truelove was an employee of a publicly- funded educational institution and as such was required to conduct a professional, ethical, and thorough investigation of the allegations made against Defendant Schewe by Plaintiffs. Defendant Truelove resigned from her position as Deputy Title IX Coordinator at UIC in May 2019.

**ANSWER**:

Schewe admits the allegations of Paragraph 10.

## JURISDICTION AND VENUE

11.    This case arises under the laws of the United States, specifically United States, specifically Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et. seq.* and 42 U.S.C. § 1983. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

**ANSWER**:

Schewe admits the Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

12.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391. The defendants are residents of the State in which this district is located and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**ANSWER**:

Schewe admits that venue is proper pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

13.     The facts and allegations presented in this Complaint comprise the experiences of all six Plaintiffs. All of the Plaintiffs were on the receiving end of harassment, inappropriate sexual conduct, and in the case of Plaintiff O'Callaghan, sexual assault, at different times and in different locations. All of them suffered through the hostile environment that was created in Defendant UIC's Criminology, Law, and Justice Department by the presence of Defendant Schewe.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 13.

14.     Over time, as the Plaintiffs shared their negative experiences in dealing with Defendant Schewe to one another in an attempt to process what had happened to them and what they experienced, a pattern emerged; a pattern of Defendant Schewe using his power and professional position to engage in sexually inappropriate and predatory behavior that put all women in Defendant UIC's Criminology, Law, and Justice Department at risk.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 14, and affirmatively alleges that, upon information and belief, Plaintiffs coordinated with one another to assert exaggerated and false allegations against Schewe.

15.     Coming forward with these allegations and reporting Defendant Schewe's behavior to UIC authorities was a difficult process for the Plaintiffs.  They all relied on Defendant Schewe for funding and access to professional opportunities.  As they graduate and enter the job market, they expected to be reliant on him for networking and letters of recommendation. Graduate students are not well paid and they rely heavily on their professors, like Defendant Schewe, for additional paid research opportunities. The financial insecurity and power disparity between graduate students and professors allow professors like Defendant Schewe to engage in inappropriate sexual behavior directed at vulnerable graduate students with minimal fear of consequence. While Defendant Schewe likely feels that his career and professional standing are now at risk because of his own actions, Plaintiffs are also putting their future careers and professional standings at risk by coming forward about the abuse they have received at the hands of Defendant Schewe.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to the process of Plaintiffs' decision to assert claims against him.  Schewe denies the remaining allegations contained in Paragraph 15.

16.     All Plaintiffs are uncomfortable in the presence of Defendant Schewe due to his inappropriate sexual misconduct.  All of the Plaintiffs also feel that they have been constantly pressured to interact and socialize with Defendant Schewe in unsafe environments (such as his

apartment and his boat) where alcohol and/or drugs are present, or they will suffer negative consequences in their academic careers, over which Defendant Schewe holds significant power.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Plaintiffs' subjective feelings, but denies that any Plaintiff ever exhibited any discomfort in his presence. Schewe denies the remaining allegations contained in Paragraph 16.

*Plaintiff Anne Kirkner and Katherine Lorenz's August 10, 2016*
*Visit to Defendant Schewe's Boat*

17.     On August 10, 2016 Plaintiffs Anne Kirkner and Katherine Lorenz accepted an invitation to Defendant Schewe's boat.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 17.

18.     During the summer of 2016 Defendant Schewe would invite her and other women on the research team out to his boat. He would also send invitations for Plaintiff Lorenz and other students to come socialize on the boat via email.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations, concerning the individual designated as "her" because she is unidentifiable. Schewe admits inviting various graduate students of all genders to his boat in the Summer of 2016, including Lorenz and admits inviting individuals by email. Schewe affirmatively alleges that he also regularly invited faculty members and administrative employees of all genders to socialize on his boat during the Summer of 2016.

19.     Plaintiff Kirkner had also been on the receiving end of these constant invitations and had similarly turned them down.  Both Plaintiffs Kirkner and Lorenz felt uncomfortable about the situation presented by the boat invitation—drinking alcohol socially with a male professor who made them feel uncomfortable.

**ANSWER**:

Schewe admits inviting Kirkner approximately twice per week following lab meetings to socialize on his boat, and affirmatively alleges this was consistent with his practice of inviting numerous individuals to socialize on his boat, including faculty and administrative employees. Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Kirkner and Lorenz's subjective feelings, but denies that either ever exhibited any discomfort in his presence.  Schewe affirmatively alleges that Lorenz voluntarily and without being invited, asked if she could visit his boat with friends.  Schewe admits that Kirkner turned down most of his invitations to socialize on his boat.

20.     Plaintiffs Kirkner and Lorenz had declined approximately ten boat invitations from Defendant Schewe before finally accepting an invitation. Plaintiffs Kirkner and Lorenz finally accepted an invitation because they felt a sense of obligation due to Defendant Schewe's constant invitations and pressure. They felt that they would be safer if they both accepted the invitation at the same time and attended the boat hangout together. Ultimately, Plaintiffs Kirkner and Lorenz both felt that they would face negative repercussions in their academic program if they continued to decline Defendant Schewe's constant and persistent invitations.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Kirkner and Lorenz's subjective feelings.  Schewe denies that any

individual, who declined his boat invitations, ever faced negative repercussions of any kind. Schewe admits that Kirkner and Lorenz accepted an invitation after declining approximately ten prior invitations.

21.     At one point on the boat, Plaintiff Kirkner had her camera phone out. Defendant Schewe told Plaintiff Kirkner that he did not want her to post any pictures or photographs that would identify who was on the boat or who Plaintiff Kirkner was with on the boat.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 21, and affirmatively alleges that he refrains from posting pictures on social media out of respect for the privacy of individuals.

22.     Defendant Schewe made it clear to Plaintiffs Kirkner and Lorenz that his wife was not going to be on the boat, at one point telling Plaintiffs that "the whole point of the boat is to get away from my wife." This comment increased Plaintiffs Kirkner and Lorenz' discomfort with the situation.

**ANSWER**:

Schewe admits to stating in an off-handed comment made in a joking manner when asked where his wife was, in words or substance, that "the whole point of the boat is to get away from my wife." Schewe denies any implication that he invited individuals based on the premise that his wife would not be present.  Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Kirkner and Lorenz's subjective feelings, but denies that either expressed any discomfort on August 10, 2016

23.     Defendant Schewe continued telling Plaintiffs Kirkner and Lorenz inappropriate stories about partying, drinking, and consuming illicit drugs on the boat, particularly cocaine.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 23.

24.     Defendant Schewe indicated that there were substances harder than alcohol on the boat.  He offered Plaintiffs Kirkner and Lorenz cocaine.  Plaintiffs declined the offer.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 23.

25.     Plaintiffs Kirkner and Lorenz spent roughly two hours on the boat.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 25.

26.     After the August 10, 2016 boat trip, Defendant Schewe continued to regularly invite Plaintiffs Kirkner and Lorenz out to the boat.  These invitations were also extended to other students, many of whom eventually attended.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 26, and affirmatively alleges that he also regularly extended invitations to meet on his boat to faculty and administrative personnel after August 10, 2016.

27.     Plaintiffs Kirkner and Lorenz felt that students who kept their relationship with Defendant Schewe academic and professional, and were not willing to socialize and hang out with Defendant Schewe (which typically included consuming alcohol to the point of intoxication) were at a disadvantage in terms of opportunities, advocacy, and funding.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity

of the allegations as to Kirkner and Lorenz's subjective feelings. Schewe denies that he denied

any student, who declined to socialize with him, opportunities, advocacy, or funding. Schewe

further denies that socializing with him typically involved alcohol consumption to the point of

intoxication.

28.     Because of this pressure to socialize with Defendant Schewe, Plaintiff Lorenz

attended a second outing on the boat that summer. On this second trip Plaintiff Lorenz brought

three friends—two men and one woman. Plaintiff Lorenz's thought process for bringing three

friends to the second outing was similar to the thought process behind her and Plaintiff Kirkner

attending the first outing together—to create a sense of protection and barrier between

themselves and Defendant Schewe's inappropriate behavior.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity

of the allegations as to Lorenz's subjective feelings or rationale for attending. Schewe denies

pressuring individuals to socialize with him. Schewe admits that Lorenz visited his boat during

the Summer of 2016. Schewe affirmatively alleges that Lorenz voluntarily and without being

invited, asked if she could come to his boat with friends at the end of 2016.

29.     Plaintiff Kirkner did not attend another outing with Defendant Schewe that

summer. She resolved to keep her relationship with Defendant Schewe entirely professional.

Following this decision she experienced a reduction in financial awards and assistance that

Defendant Schewe was in control of or had influence over.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity

of the allegations as to whether he socialized with Kirkner again, or as to Kirkner subjective

feelings. Schewe denies that he ever acted to reduce Kirkner's financial awards or assistance, and affirmatively alleges that he continued to provide Kirkner with fellowship and scholarship nominations, job opportunities, and letters of recommendation, as he did with all students in UIC's Criminology, Law, and Justice Department.

### *Plaintiff Marlee Fry's September 18, 2016 Visit to Defendant Schewe's Boat*

30.     On September 7, 2016 Plaintiff Fry received an email invitation to have wine and cheese on Defendant Schewe's boat the following day. The invitation also stated that Defendant Schewe would be present on the boat all week and that Plaintiff Fry was welcome to come by at any time. The stated purpose of this boat outing was for Plaintiff Fry and two other graduate students to meet Defendant Schewe and one another because they had not met at orientation.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 30.

31.     Plaintiff Fry was the first student to arrive to the boat.  Defendant Schewe greeted Plaintiff Fry with a comment on her physical appearance, saying "wow, you look great." Also present on the boat were two of Defendant Schewe's male friends not associated with the UIC Criminology, Law, and Justice Department.  Plaintiff Fry could sense that all three men had been drinking for some time and were intoxicated.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations contained in Paragraph 31 as to when Fry arrived or left the boat in relation to the other two students who attended, as to the words he used to greet Fry when she arrived, or regarding the presence or status of other individuals.  Schewe denies being intoxicated.

32.     When the second graduate student arrived, Defendant Schewe's friends made several more comments about the new student's physical appearance, including how sexually desirable they found her to be.  Defendant Schewe did not intervene.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations of Paragraph 32 as he does not recall hearing any such comments.

33.     At one point Defendant Schewe's friend, who had made the comments about the other student's appearance, placed one of his fingers into a hole in Plaintiff Fry's jeans while laughing.  Plaintiff Fry told him to stop.  Again, Defendant Schewe did not intervene.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations of Paragraph 33 as he does not recall observing any of the conduct alleged.

34.     As he did during the August 10, 2016 boat trip with Plaintiffs Kirkner and Lorenz, Defendant Schewe told Plaintiff Fry that he was on the boat to get away from his wife.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations of Paragraph 34.

35.     Shortly after more of Defendant Schewe's friends arrived at the boat and because she felt uncomfortable and unsafe, Plaintiff Fry left.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations of Paragraph 35 as to Fry's subjective feelings, but denies that she ever expressed any discomfort, or exhibited any behavior indicating that she felt unsafe.  Schewe

admits that at some point, she left the boat.

36.     Plaintiff Fry felt severe anxiety after leaving the boat. She was concerned that because she clearly felt uncomfortable and unsafe on the boat and was not engaging in the sexually inappropriate discussion and joking, that this could possibly have negative repercussions for her within the program. This is the similar to the fear that Plaintiffs Kirkner and Lorenz felt when they left Defendant Schewe's boat.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 36 as to Fry, Kirkner, or Lorenz's subjective feelings.  Schewe denies that Fry, Kirkner, or Lorenz ever exhibited any behavior indicating they felt unsafe on the boat or otherwise, or that any suffered negative repercussions within the program for any reason whatsoever.

37.     After the September 18, 2016 outing and unlike Plaintiffs Kirkner and Lorenz, Plaintiff Fry was not invited back to Defendant Schewe's boat.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 37.  Schewe affirmatively alleges that his invitations were generally extended to individuals he encountered in the Criminology, Law and Justice Department at UIC, and Fry was rarely present.

38.     Prior to the September 18, 2016 boat trip, Plaintiff Fry had already been enrolled in a course taught by Defendant Schewe in the upcoming semester.  Her next, and final, trip to the boat occurred during a class session in which Defendant Schewe decided to conduct class on the boat.  Although Plaintiff Fry felt uncomfortable with this sudden change due to her previous

experience on the boat, she felt compelled to attend as the other students were going and it was part of the class.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations of Paragraph 38 as to Fry's subjective feelings. Schewe admits that Fry attended a class session he held on the boat

39.     Once on the boat, Defendant Schewe failed to seriously teach class. Rather than discuss the reading assignment and class material, which was the original plan, Defendant Schewe proceeded to tell informal stories about his life and expressed disappointment about how he and the students should not drink because it was technically class time.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 39, and affirmatively alleges that he exercised his academic freedom and held an informal class during which he discussed employing violence prevention principles when raising children, his graduate school experience, and non-traditional career path, which were intended to foster discussion and consideration by students of alternative ways of advancing in academia, and the application of principles they were studying to everyday life.

40.     Plaintiff Fry has limited her interactions and contact with Defendant Schewe as a direct result of her experience on the boat on September 18, 2016. When she has been referred to him for academic or career advice, she has not felt safe doing so.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 40 as to Fry's subjective feelings, but denies that he observed

fewer interactions with her or that she ever exhibited behavior indicating she felt unsafe.

*Plaintiff Sarah Malone's Visits to Defendant Schewe's Boat*

41.     Plaintiff Malone was invited to visit Defendant Schewe on his boat at the harbor on September 22, 2017.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 41.  Schewe affirmatively alleges that he often extended invitations to graduate students, faculty, and administrative staff to come by his boat if they wished.

42.     As with the other Plaintiffs, Plaintiff Malone felt compelled to accept the invitation that day because of Defendant Schewe's power over funding and other academic opportunities and because it was clear that Defendant Schewe favored students who socialized with him outside of professional and academic settings. Another woman from the Criminology, Law, and Justice Department was also on the boat that day. Defendant Schewe invited Malone to come back the following evening to meet one of his friends.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 42 as to Malone's subjective feelings, but denies favoring students, who socialized with him outside of professional and academic settings, with respect to funding or academic opportunities.  Schewe admits inviting Malone to the boat the following evening in order to introduce her to an African-American female friend with a doctoral degree in Education, and who could be a beneficial professional connection.

43.     The following evening when Plaintiff Malone returned there was a party taking place on the dock.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations contained in Paragraph 43.

44.     Defendant Schewe introduced Plaintiff Malone to another man, one [sic] his graduate students, and if [sic] front of the male graduate student, stated, "I only fuck my students after they've defended [their dissertations]." This comment made Plaintiff Malone feel uncomfortable and unsafe and she left shortly thereafter.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Malone's subjective feelings.  Schewe denies the remaining allegations in Paragraph 44, and affirmatively alleges that Malone never exhibited behavior indicating she felt uncomfortable or unsafe.

### *Defendant Schewe's Sexual Assault of Plaintiff O'Callaghan*

45.     On the evening of November 2, 2017 Plaintiff O'Callaghan, Plaintiff Shepp, Plaintiff Malone and her partner, and other UIC students, primarily in the UIC Department of Criminology, Law, and Justice, attended an informal happy hour gathering at a local restaurant and bar ("Beer Bistro") that was arranged and hosted by Defendant Schewe and an additional graduate student, Almethia Franklin.  Dr. Peter Ibarra, another UIC professor was also in attendance.

**ANSWER**:

Schewe admits that the identified Plaintiffs, Peter Ibarra, and other UIC students

primarily in the UIC Department of Criminology, Law, and Justice, attended an informal happy hour gathering at Beer Bistro, but denies that it was hosted by Schewe and Almethia Franklin.

46.     This outing took place during Plaintiff O'Callaghan's first semester of graduate school.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 46.

47.     There was a $5 martini special that night at Beer Bistro. Defendant Schewe and most of the students in attendance drank several drinks, enough to be significantly intoxicated.

**ANSWER**:

Schewe admits that Beer Bistro had a $5 martini special that night, and that most students in attendance drank several drinks, but denies that anyone drank enough to be significantly intoxicated.

48.     Plaintiffs O'Callaghan and Shepp had 5-6 alcoholic drinks each in the roughly three hours spent at Beer Bistro.  Plaintiff O'Callaghan had not eaten dinner that evening, which caused her to be even more intoxicated.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 48, but affirmatively alleges that O'Callaghan was not significantly intoxicated that night.

49.     Around 10:00 PM, after Dr. Ibarra and some of the students had left, a smaller group remained, including Plaintiff O'Callaghan, Plaintiff Shepp, Plaintiff Malone, Plaintiff Malone's partner, Almethia Franklin, Jorge Mantilla, and Defendant Schewe. Defendant Schewe invited the remaining group back to his apartment to continue drinking and socializing.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 49.

50.     Defendant Schewe drove Plaintiff O'Callaghan, Plaintiff Shepp (who were considerably intoxicated themselves), and another graduate student to his apartment.  Plaintiff Malone, her partner, and the rest of the group drove in a separate vehicle.

**ANSWER**:

Schewe admits that he drove students to his apartment, but denies being significantly intoxicated when doing so, or that O'Callaghan or Shepp were considerably intoxicated.

51.     As soon as Plaintiff O'Callaghan, Plaintiff Shepp, and others entered Defendant Schewe's apartment, Defendant Schewe began pressuring alcohol upon everyone in attendance.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 51.

52.     Defendant Schewe brought out marijuana and marijuana edibles and offered it to all of the guests.  Defendant Schewe insisted that Plaintiff Shepp consume marijuana, hovering over her until she participated.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 52.

53.     Plaintiff Shepp expressed discomfort at the idea of her graduate advisor and Director of Graduate Studies offering her marijuana and indicated that it was inappropriate for her adviser to do so.  Defendant Schewe responded that that is how it should be.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 53.

54.     At one point during the evening, Defendant Schewe invited Plaintiff O'Callaghan into his laundry room, telling her that he wanted her to sample of a homemade wine that was being made. Once in the laundry room, Defendant Schewe moved closer to Plaintiff O'Callaghan and made a physical advance, placing his hand on her back. Plaintiff O'Callaghan then moved away and suggested that they go back to the living room with the rest of the guests.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 54, and affirmatively alleges that he invited everyone to view homemade wine being made in his laundry room, that several guests including Malone and O'Callaghan followed Schewe into the laundry room, and that only O'Callaghan expressed a desire to sample the wine.

55.     Between the time the group arrived at the apartment and Plaintiff O'Callaghan's sexual assault, Plaintiff O'Callaghan consumed one to two alcoholic beverages, with Defendant Schewe's encouragement.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 55 regarding how many alcoholic beverages Plaintiff O'Callaghan consumed.  Schewe denies the remaining allegations contained in Paragraph 55.

56.     Once back in the living room among the other guests, Defendant Schewe continued to maintain close proximity to Plaintiff O'Callaghan, including sitting directly next to her on the couch.  While seated on the couch next to one another, Defendant Schewe placed his arm around Plaintiff O'Callaghan's waist, then reached his hand up the back of her shirt, under the back of her bra, and began rubbing her back.  Plaintiff Malone witnessed Defendant Schewe's hand on Plaintiff O'Callaghan's back. Plaintiff Malone's partner also witnessed

Defendant Schewe's hand on Plaintiff O'Callaghan's back and under her shirt.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 56, and affirmatively alleges that O'Callaghan sat next to him on the arm of the couch.

57.     Plaintiff O'Callaghan's intoxication, fear of causing a scene in Defendant Schewe's apartment, and fear of the power disparity between them caused her to freeze up when Defendant Schewe began touching her back.  She did not encourage or reciprocate the back rubbing that Defendant Schewe initiated.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 57.

58.     Eventually, while the rest of the group was still socializing, Plaintiff O'Callaghan fell asleep on the couch. The rest of the group went to go get food with plans to return shortly. Plaintiff Shepp checked on Plaintiff O'Callaghan before she left to get food, Plaintiff O'Callaghan was too intoxicated to get up, and was left sleeping on the couch. Defendant Schewe also remained at the apartment.

**ANSWER**:

Schewe admits that the rest of the group went to go get food with plans to return shortly, and that he remained at the apartment.  Schewe denies the remaining allegations contained in Paragraph 58, and affirmatively alleges that Plaintiff O'Callaghan was not asleep on the couch but was instead awake and alert.

59.     When Plaintiff Malone and a few others returned to the apartment less than 20 minutes later the lights were no longer on as they had been prior.  Plaintiff Malone then saw Defendant Schewe in his underwear near his bedroom.  He placed a radio or stereo near the

bedroom door with the volume turned up. Plaintiff O'Callaghan was not in sight. The lights in Defendant Schewe's bedroom were off.

**ANSWER**:

Schewe admits that students returned to his apartment less than 20 minutes after leaving. Schewe denies the remaining allegations contained in Paragraph 59, and affirmatively alleges that his door was never closed the whole night, there was no radio, and O'Callaghan had followed him into his bedroom.

60. After seeing Defendant Schewe in his underwear in his apartment with students present, Plaintiff Malone became extremely uncomfortable and left with her partner.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 60 as to Malone's subjective feelings or to when she left the gathering.

61. Plaintiff O'Callaghan does not recall how she got to Defendant Schewe's bedroom while the rest of the group went to get food. Plaintiff O'Callaghan does recall that at some point Defendant Schewe entered the bedroom, laughed, rolled her over from her side onto her back, pulled her pants and underwear down, and performed oral sex on her, all without consent. Plaintiff O'Callaghan blacked out after Defendant Schewe began performing oral sex on her.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 61. Schewe affirmatively alleges that O'Callaghan voluntarily stayed at his apartment two separate times after guests left the party,

that she entered Schewe's bedroom uninvited, and that she voluntarily removed her own pants, got into his bed uninvited, and initiated sexual contact with Schewe, which he halted.

62.    Plaintiff O'Callaghan **did not** consent to any form of sexual activity or intercourse with Defendant Schewe. Plaintiff O'Callaghan, due to her intoxication that Defendant Schewe had encouraged all night, **could not** consent to any form of sexual activity.

**ANSWER**:

Schewe denies that he and O'Callaghan engaged in any form of sexual activity, that he encouraged anyone to drink that night, and that O'Callaghan was too intoxicated to completely control her own actions and behavior that evening.

63.    In Defendant Schewe's telling of the events of the evening of November 2, 2017, as told to the investigators in Defendant UIC's internal investigation, he clearly states that he would have been a willing participant in sexual relations or intercourse with Plaintiff O'Callaghan that evening.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 63, and affirmatively alleges that UIC's investigators asked if Schewe would have been a willing participant when O'Callaghan indicated a desire to have sex, to which he responded hypothetically that indicating a desire for sex is a clear indicator of consent.

64.    The next morning Plaintiff O'Callaghan woke up. At one point while Plaintiff O'Callaghan laid in the bed she recalls Defendant Schewe placing his arm on her shoulder.

**ANSWER**:

Schewe admits that O'Callaghan woke up the next morning, but has insufficient information upon which to form a belief as to the truth or falsity of the remaining allegations in

Paragraph 64.

65.     After locating her pants that Defendant Schewe had removed and mustering the

courage to get up, Plaintiff O'Callaghan got out of Defendant Schewe's bed and went to the

bathroom. Defendant Schewe also got up and began making coffee. He asked her if she felt okay

and wanted breakfast. She said that she did not, and hurriedly left Defendant Schewe's

apartment. She began crying as soon as she exited, realizing she had been sexually assaulted by

her professor.

**<u>ANSWER</u>**:

Schewe admits that he got out of bed, that he began making coffee, that O'Callaghan got

out of his bed, that he asked if she wanted coffee, and that she hurriedly left.  Schewe denies that

he removed O'Callaghan's pants, and denies that he assaulted O'Callaghan.  Schewe has

insufficient information upon which to form a belief as to the truth or falsity as to her decision-

making to get out of his bed, her actions after she exited his apartment, or as to any inquiries

about breakfast, how she felt, or her response.

66.     Plaintiff O'Callaghan's initial inclination was to keep what had happened that

morning and previous evening a secret as to not jeopardize her graduate career and future career

goal of becoming a professor. This is similar to the calculations that Plaintiffs Kirkner and

Lorenz made after experiencing Defendant Schewe's inappropriate behavior on his boat on

August 10, 2016.

**<u>ANSWER</u>**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity

of the allegations as to O'Callaghan, Lorenz' or Kirkner's subjective feelings, but denies

engaging in any sexual activity with O'Callaghan, or that any action O'Callaghan took on the

evening of November 2, 2017 would jeopardize her graduate career and future professional

goals.

67.     Defendant O'Callaghan fell into a deep depression in the days immediately

following the sexual assault. Her close friends noticed this change in her behavior.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity

of the allegations of O'Callagahan's mental state, or her friends' perceptions after November 2,

2017.  Schewe denies committing any sexual assault against O'Callaghan.

68.     On November 5, the Sunday following the sexual assault, Defendant Schewe sent

Plaintiff O'Callaghan an email in which he alluded to engaging in inappropriate, unwanted, and

non- consensual sexual relations with Plaintiff. This email reads:

Hey Erin,

I really want to talk to you, but I'm out of town til Tuesday, so I figured I'd write instead. I'm at
my sister's house in Albion Indiana. She's taking a bit of break while I watch her kids. Her oldest
son is in home hospice care with hepto-pulmonary disease, and her youngest has fetal alcohol
syndrome. She adopted three special needs children, and has had 2 birth children. Her first birth
child was born with spina bifida. She really is an amazing person... but I digress...

When you left on Friday morning, you seemed concerned, perhaps upset, and not just hungover.
At first I was confused. But on my drive to Indiana I got to thinking more about it (I can be a
very slow thinker). On Thursday night, I thought of us just as two adults sharing time together. I
was extremely flattered at the attention you seemed to be showing me. Here you are a smart
intelligent person who's going to change the world, and you were paying attention to me. I'm in
place in my life right now where I'm craving relationship. It wasn't until later on Friday that I got
to thinking. You're a student. I'm a professor. You're young. I'm old. Did I completely
misinterpret things?

i feel like I should have been more of an adult that night. That I should have shown more restraint.
Talked more and assumed less. Anyways, if you're comfortable sharing, please let me know how
you're feeling."

**ANSWER**:

Schewe admits sending an email on November 5, 2017 to O'Callaghan, which is

accurately recited in Paragraph 68. Schewe denies O'Callaghan's characterization of his communication and denies alluding to engaging in inappropriate, unwanted, or non-consensual sexual relations with O'Callaghan.

69.     Several of Defendant Schewe's statements in the email directly allude to the fact that he did something he knows to be inappropriate, regrettable, and a violation of Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault. Defendant Schewe's email also attempts to blame Plaintiff O'Callaghan for her sexual assault and suggests that the sexual assault was the result of miscommunication or a misunderstanding that was Plaintiff O'Callaghan's fault. These statements include, but are not limited to:

1.  At first I was confused. But on my drive to Indiana I got to thinking more about it (I can be a very slow thinker).
2.  "On Thursday night, I thought of us just as two adults sharing time together. I was extremely flattered at the attention you seemed to be showing me."
3.  "Here you are a smart intelligent person who's going to change the world, and you were paying attention to me."
4.  "I'm in a place in my life right now where I'm craving relationship"
5.  "You're a student. I'm a professor. You're' young. I'm old."
6.  "i feel like I should have been more of an adult that night. That I should have shown more restraint. Talked more and assumed less."

**ANSWER**:

Schewe denies the allegations contained in Paragraph 69.

70.     The statement Defendant Schewe makes that he "should have shown more restraint" and "talked more and assumed less" implies that he did something of a physical and sexual nature that evening that he should have not done. The other statements give a similar impression, as does the apologetic tone.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 70.

71.     Unlike Plaintiff O'Callaghan and other Plaintiffs in this Complaint, Defendant

Schewe has not kept a consistent and straight story regarding the events of that evening. Witness

8 in Defendant UIC's internal investigation states explicitly that she recalls another student in

attendance on the evening of Plaintiff O'Callaghan's assault telling her that Defendant Schewe's

story had changed multiple times— shifting from claiming he did not have sex with Plaintiff

O'Callaghan, to admitting that he did, to again denying it.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 71.

72.     Plaintiff did not respond to Defendant Schewe's email regarding the sexual

assault. Receiving the email caused her additional anxiety and stress. Plaintiff O'Callaghan

continued to work on Defendant Schewe's grant after her assault because (1) she desperately

needed the financial assistance it provided and the chances of finding another comparable grant

or fellowship was nonexistent; and (2) because if she refused the grant funding, she likely would

have had to explain why, and she wanted to avoid recounting and reliving the assault.

**ANSWER**:

Schewe admits that O'Callaghan did not respond to the email he sent on November 5,

2017, and that she continued to work on his grant.  Schewe denies the remaining allegations

contained in Paragraph 72.

73.     Plaintiff O'Callaghan relied on Plaintiff Kirkner and Plaintiff Shepp to

accompany her to grant meetings with Defendant Schewe (they were also on the same grant and

reliant on its funding). The presence of Plaintiffs Kirkner and Shepp reduced Plaintiff

O'Callaghan's stress and anxiety to a level where she could get through these meetings. Plaintiffs Kirkner and Shepp also kept these meetings on track, as Defendant Schewe had a tendency to go on tangents about other subjects, in order for them to be over as quick as possible.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations in Paragraph 73 as to O'Callaghan's subjective feelings. Schewe denies the remaining allegations, and affirmatively alleges that he always met with O'Callaghan in the presence of other people after November 2, 2017.

74.     At one of these meetings Defendant Schewe made a comment about how he would party with R. Kelly if given the opportunity. This comment was made **after** Defendant Schewe had been consulted by an advocate for UIC's Women's Leadership and Resource Center regarding the group's #MuteRKelly campaign, designed to get Defendant UIC to cancel a planned R. Kelly concert following the revelations about his history of sexual assault of underage girls and young women that had been in the national spotlight. Plaintiffs O'Callaghan, Kirkner, and Shepp found Defendant Schewe's comment disturbing given the fact that they were all students studying sexual and gender-related violence and that Defendant Schewe was a professor teaching and researching about these subjects. Given the timing and context, it is difficult to not see this comment as verbal sexual harassment.

**ANSWER**:

Schewe admits to saying in words or substance that he "would party with" an African American rap artist being discussed by O'Callaghan, Kirkner, and Shepp, but affirmatively alleges that he was unaware of the specific individual they were discussing. Schewe has

insufficient information upon which to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 74.

75.     Other students, including Plaintiff Shepp, witnessed the negative impact that Defendant Schewe's actions and presence at UIC had on Plaintiff O'Callaghan's life, mental state, and ability to function normally in the days, weeks, and months following the sexual assault.  The Plaintiffs often had to organize their schedules in a manner such that they would have as little contact with Defendant Schewe as possible and scheduled preparatory meetings before and after one did see him.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Shepp's or other students' perceptions of O'Callaghan's life and mental state, or actions allegedly taken by Plaintiffs.  Schewe denies sexually assaulting O'Callaghan.

76.     Plaintiff O'Callaghan's decision to come forward and make an official report regarding her sexual assault came from the realization that she was suffering in silence and no longer felt safe in her own academic department and that Defendant Schewe remained a threat to incoming classes of women who were similar to herself.  In addition, Defendant Schewe was slated to teach a course entitled "Violence and Victimization" and Plaintiff O'Callaghan did not want herself or future students to have to take such a course with Defendant Schewe.

**ANSWER**:

Schewe admits that he was slated to teach a course entitled "Violence and Victimization." Schewe denies sexually assaulting O'Callaghan and denies that she or any other student ever expressed any discomfort, or indicated feeling unsafe.  Schewe has insufficient information upon which to form a belief as to the truth or falsity of O'Callaghan's subjective feelings.

### *Other Instances of Defendant Schewe's Inappropriate Conduct*

77.     At an end of semester party in December of 2016 Defendant Schewe, who was clearly too intoxicated to drive a motor vehicle, offered to drive Plaintiff Lorenz home from the event.

**ANSWER**:

Schewe admits offering to drive Lorenz home following an end of semester party in December of 2016, and denies the remaining allegations contained in Paragraph 77.

78.     Defendant Schewe has a pattern of behaving inappropriately toward female students while he was intoxicated. Offering to drive female students home while intoxicated is part of this pattern.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 78, and affirmatively alleges that he often offers to drive colleagues home when it is dark, rainy, or cold outside.

79.     During the fall 2017 semester, Defendant Schewe texted Plaintiff Lorenz a photo of two naked, or almost naked, women. The photograph appeared to be taken from his boat or someone else's boat.

**ANSWER**:

Schewe admits that during the Fall 2017 semester, he inadvertently sent a text to Lorenz that contained a picture of two women wearing bikinis on someone else's boat.  Schewe affirmatively alleges the text was sent to Lorenz in error, which she acknowledged and understood.  Schewe affirmatively alleges that Lorenz replied by text stating, "Lol. Sorry I'm missing out on what looks to be such a good time!"

80.     Later that same semester, Plaintiff Lorenz walked into Defendant Schewe's office for a meeting. Defendant Schewe had naked pictures of a woman open on his desktop computer monitor. The images did not appear to be work or research related. The pictures were clearly in view of Plaintiff Lorenz.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations contained in Paragraph 80.

81.     Another incident occurred at Plaintiff Lorenz' dissertation defense party which took place on or about September 20, 2017.  Defendant Schewe commented to Plaintiff Lorenz' [sic] partner that "there are so many women here I want to fuck." Many of the women in attendance at the party, which included Plaintiff O'Callaghan, Plaintiff Shepp, and Plaintiff Kirker, were graduate students that Defendant Schewe had power over, much like Plaintiff O'Callaghan.

**ANSWER**:

Schewe denies ever expressing a desire to have sexual intercourse with graduate students present at Lorenz's dissertation defense party, but admits that there were graduate students at the party, which took place on September 20, 2017.  Schewe denies making the statement alleged to Lorenz's partner.

82.     Defendant Schewe admitted to Defendant UIC's internal investigators that he has had sexual and/or romantic relationships with former students.

**ANSWER**:

Schewe admits to the allegation in Paragraph 82.

83.     Plaintiff Kirkner knows of an undergraduate student who no longer feels safe around Defendant Schewe due to sexually inappropriate comments he made in front of her while on Defendant UIC's campus.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to an unidentified undergraduate student's subjective feelings or Kirkner's knowledge.  Schewe denies the remaining allegations contained in Paragraph 83.

84.     Upon graduation, Plaintiff Lorenz had not yet secured post-graduation employment, and thus was in need of income. Defendant Schewe offered her funding for the spring 2018 semester if she delayed her graduation. Plaintiff Lorenz declined this offer, primarily due to Defendant Schewe's constant inappropriate behavior. Plaintiff Lorenz could not tolerate the thought of working with, and under, Defendant Schewe for another semester, and enduring uncomfortable and inappropriate interactions with him. Instead of taking Defendant Schewe's offer for funding and staying in the world of academia and furthering her career opportunities, Plaintiff Lorenz chose to work a minimum wage job as a restaurant host in order to make ends meet before she secured employment as a professor.

**ANSWER**:

Schewe admits that Lorenz had not yet secured post-graduation employment, that he offered her funding for the Spring 2018 semester working with Kirkner, Shepp, and O'Callaghan, which would have required her to delay graduation until May, and that Lorenz declined his offer.  Schewe denies engaging in any inappropriate behavior.  Schewe has insufficient information upon which to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 84.

***Defendant UIC's Sexual Misconduct Policy and***
***Defendant UIC's Internal Investigations of Defendant Schewe***

85. On August 12, 2018 the six Plaintiffs named in this complaint (Erin O'Callaghan, Veronica Shepp, Katherine Lorenz, Anne Kirkner, Sarah Malone, and Marlee Fry) **separately** made **six** Title IX complaints to Defendant UIC. While all six complaints concerned the conduct and behavior of Defendant Schewe, each Plaintiff's complaint reflected their own individual experiences and concerns.

**<u>ANSWER</u>**:

Schewe admits he was informed during the course of the Title IX investigation that the six Plaintiffs filed Title IX complaints against him, but denies engaging in any misconduct. Schewe affirmatively alleges that upon information and belief, Plaintiffs coordinated their actions against him to lend aid to O'Callaghan.

86. Rather than conducting serious, timely, and thorough investigations of each independent complaint, Defendant UIC, by and through its Title IX Coordinator (Defendant Diaz) and/or Title IX Deputy Coordinator (Defendant Truelove), only moved forward to investigate **two** of these complaints: the complaint made by Plaintiff O'Callaghan and the complaint made by Plaintiff Lorenz.

**<u>ANSWER</u>**:

Schewe admits that UIC moved forward with two investigations of complaints by O'Callaghan and Lorenz. Schewe denies the remaining allegations contained in Paragraph 86.

87. The remaining four students, Veronica Shepp, Anne Kirkner, Sarah Malone, and Marlee Fry were simply considered "witnesses" in the two investigations that moved forward.

**ANSWER**:

Schewe admits that Veronica Shepp, Anne Kirkner, Sarah Malone, and Marlee Fry were considered witnesses in the two investigations that moved forward as, upon information and belief, they did not allege any behavior that constituted a violation of UIC's sexual misconduct policy.

88.     Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault defines sexual misconduct. The Policy states, "Sexual misconduct is the term used in this policy to encompass unwanted or unwelcome conduct of a sexual nature that is committed without valid consent."

**ANSWER**:

Schewe admits the allegations contained in Paragraph 88.

89.     Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault defines sexual harassment. The Policy states,

> "What is Sexual Harassment?
> - In employment, sexual harassment is defined as any unwelcome sexual advances, requests for sexual favors, or any conduct of a sexual nature when
>     1. submission to such conduct is either explicitly or implicitly made a term or condition of employment; and
>     2. submission to or rejection of the conduct is used as a basis for making decisions about employment; or
>     3. such conduct interferes with job performance or creates an intimidating, hostile, or offensive working environment."
> - In education, sexual harassment is defined as any unwelcome sexual advances or requests for sexual favors made to a student by an executive member, administrative staff, or faculty member; or any conduct of a sexual nature that substantially interferes with the student's educational performance or creates an intimidating, hostile, or offensive working environment.
>
> A hostile environment may be created through unwelcome, severe or pervasive acts:

- o Sexual advances
- o Fondling
- o Shoulder massages
- o Pinching
- o Grabbing
- o Lewd hand gestures
- o Leering
- o **Suggestive comments**
- o **Off-color jokes**
- o **Comments on physical attributes**
- o **Discussions of sexual exploits**
- o Lewd voicemail messages
- o **Displays of sexually suggestive pictures, photos, cartoons, screen salleges**
- o **Lewd e-mails or texts**
- o Sexually suggestive posts on social media
- o Facebook pictures with sexual overtones

The University holds harassers accountable for their actions and issues sanctions consistent with employees' and students' rights.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 89.

90.    Defendant UIC's Comprehensive Policy regarding Dating Violence,

Domestic Violence, Stalking and Sexual Assault defines consent. The Policy states,

"Consent means clear and unambiguous agreement by a competent person that is freely given and expressed in mutually understandable words or actions, to engage in a particular sexual activity with a specific person or persons.

- Consent must be voluntarily given and cannot be the result of force, threats, intimidation and/or coercion (e.g. emotional or psychological pressure);

- A person's lack of verbal or physical resistance or submission resulting from the use of threat of force does not constitute consent;

- A person's manner of dress does not constitute consent;

- A person's consent to past sexual activity does not constitute consent to

future sexual activity;

- The absence of a response does not communicate consent;
- A person's consent to engage in sexual activity with one person does not constitute consent to engage in sexual activity with another;
- Consent can be withdrawn by either party at any time;
- A person cannot consent to sexual activity if that person is unable to understand the nature of the activity or give knowing consent due to circumstances, including without limitation the following:
  - The person is incapacitated due to the use or influence of alcohol or drugs;
  - The person is asleep or unconscious;
  - The person is under the age of consent;
  - The person is incapacitated due to mental or physical disability."

**ANSWER**:

Schewe admits the allegations contained in Paragraph 90.

91. Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault states that, "The Investigator will make a recommendation of finding with respect to whether consent was given at the time of the incident under investigation based upon the definitions of consent within the policy and the guidance provided by federal and state legislation and regulations."

**ANSWER**:

Schewe admits the allegations contained in Paragraph 91.

92. Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault states that internal investigators will use a preponderance of evidence standard, meaning that determinations are to be based on whether it is more likely than not that "the alleged conduct constitutes a violation of the UIC Sexual Misconduct Policy."

**ANSWER**:

Schewe admits the allegations contained in Paragraph 92.

93.     Defendant Schewe violated Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault on countless occasions, just in regards to the six Plaintiffs in this Complaint.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 93.

94.     Examples of Defendant Schewe violated Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault included in this Complaint include, but are not limited to:

- constantly offering to drive female students home while he was intoxicated;
- offering Plaintiffs Kirkner and Lorenz cocaine on his boat;
- making a comment on Plaintiff Fry's physical appearance;
- making comments about another student's physical appearance and sexual desirability in Plaintiff Fry's presence;
- making the inappropriate comment, "I only fuck my students after they've defended [their dissertations]," when introducing Plaintiff Malone to one of his friends at the boat dock;
- making the inappropriate comment, "there are so many women in here I want to fuck," to Plaintiff Lorenz' partner at an event which was largely attended by graduate students in his Department;
- text messaging Plaintiff Lorenz a photograph of two nude, or almost nude, women;
- pressuring female students to consume marijuana and marijuana edibles at his home;
- aggressively forcing alcoholic beverages on students, including Plaintiff O'Callaghan;
- making unwanted physical and sexual advances toward Plaintiff O'Callaghan; and
- performing oral sex, and possibly other sexual acts, on Plaintiff O'Callaghan without her consent and while she was heavily intoxicated (which he admitted to Almethia Franklin).

**ANSWER**:

Schewe denies the allegations in Paragraph 94.

95.     Despite the multiplicity of witness accounts to Defendant Schewe's behavior on the evening of Plaintiff O'Callaghan's sexual assault, Defendant Schewe's incontrovertible history of sexually inappropriate behavior when dealing with female students, and evidence supporting Plaintiff O'Callaghan's claim of sexual assault (primarily the email Defendant Schewe sent her in which he alludes to wrongdoing), Defendant UIC's internal investigators in the Office for Access and Equity and, Defendants Diaz (Title IX Coordinator) and Truelove (Deputy Title IX Coordinator), using the preponderance of evidence standard, failed to substantiate the majority of Plaintiff O'Callaghan's accurate factual claims, and found Defendant Schewe guilty of no violations of Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault.

**ANSWER**:

Schewe admits that UIC's investigation determined that he had committed no violation of UIC's Sexual Misconduct Policy applying the preponderance of evidence standard, and that it did not substantiate the majority of O'Callaghan's factual claims, which Schewe affirmatively alleges are false.  Schewe denies the remaining allegations in Paragraph 95.

96.     The investigation into Plaintiff Lorenz' [sic] complaint against Defendant Schewe came to similar, unsatisfactory, conclusions as those in the investigation into Plaintiff O'Callaghan's claims. Defendant UIC's internal investigation decided that Defendant Schewe texting a picture of two almost- nude women to Plaintiff Lorenz, subjecting her to non-research related pornographic imagery on campus, and telling Plaintiff Lorenz' partner that "there are so many women here I want to fuck" at a dissertation party that Plaintiff Lorenz and many other current female graduate students were in attendance to were not violations of Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual

Assault. The findings did not include any mention of Defendant Schewe offering Plaintiffs

Lorenz and Kirkner cocaine on his boat on the August 10, 2016 boat trip.

**ANSWER**:

Schewe admits that UIC's investigation determined that Schewe had committed no

violation of UIC's Sexual Misconduct Policy, and denies the remaining allegations contained in

Paragraph 96.

97.     Despite filing her own independent Title IX complaint against Defendant Schewe,

Plaintiff Shepp was simply used as a "witness" in Defendant UIC's investigations.

**ANSWER**:

Schewe admits that Shepp filed her own Title IX complaint against Schewe and that

Shepp was considered a witness in the two investigations that moved forward as, upon

information and belief, she did not allege any behavior that constituted a violation of UIC's

sexual misconduct policy.  Schewe also affirmatively alleges that, upon information and belief,

Shepp coordinated her actions against Schewe with other Plaintiffs to lend aid to O'Callaghan.

98.     Despite filing her own independent Title IX complaint against Defendant Schewe,

Plaintiff Kirkner was simply used as a "witness" in Defendant UIC's investigations.

**ANSWER**:

Schewe admits that Kirkner filed her own Title IX complaint against Schewe and that

Kirkner was considered a witness in the two investigations that moved forward as, upon

information and belief, she did not allege any behavior that constituted a violation of UIC's

sexual misconduct policy.  Schewe also affirmatively alleges that, upon information and belief,

Kirkner coordinated her actions against Schewe with other Plaintiffs to lend aid to O'Callaghan.

99.     Despite filing her own independent Title IX complaint against Defendant Schewe, Plaintiff Fry was simply used as a "witness" in Defendant UIC's investigations.

**ANSWER**:

Schewe admits that Fry filed her own Title IX complaint against Schewe and that Fry was considered a witness in the two investigations that moved forward as, upon information and belief, she did not allege any behavior that constituted a violation of UIC's sexual misconduct policy.  Schewe also affirmatively alleges that, upon information and belief, Fry coordinated her actions against Schewe with other Plaintiffs to lend aid to O'Callaghan.

*Impact of Defendant Schewe's Misconduct on Plaintiffs' Education, Employment, and Lives*

100.     Plaintiff O'Callaghan has suffered, and continues to suffer, the mental, emotional, and psychological distress that accompanies being a victim of a sexual assault. Plaintiff O'Callaghan has suffered severe anxiety and panic attacks as a result of Defendant Schewe's actions on the evening of November 2, 2017. The finding from Defendant UIC's internal investigation that failed to substantiate her factual allegations and failed to find Defendant Schewe in violation of Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault has also contributed to these stressors.

**ANSWER**:

Schewe admits that O'Callaghan has previously claimed to suffer mental, emotional, and psychological distress that accompanied her sexual abuse as a child.  Schewe denies engaging in any sexual activity with O'Callaghan on November 2, 2017.  Schewe has insufficient information upon which to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 100.

101.    Plaintiff O'Callaghan does not feel safe in Defendant UIC's Criminology, Law, and Justice Department as a proximate result of Defendant Schewe's sexual assault committed against her, as well as the sexually predatory behavior he has exhibited toward other Plaintiffs. Put simply, Plaintiff O'Callaghan has been robbed of a safe educational environment that students are promised when they attend a federally-funded public university—Plaintiff O'Callaghan has been forced to endure a sexually hostile environment since the night of her assault.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations contained in Paragraph 101 as to O'Callaghan's subjective feelings.  Schewe denies the remaining allegations contained in Paragraph 101.

102.    Additionally, that Defendant UIC, Defendant Diaz, and/or Defendant Truelove failed to find any of Defendant Schewe's behavior on the evening of November 2, 2017 to be in violation of Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault is absurd and has directly contributed to the hostile environment that Plaintiff O'Callaghan has been forced to endure, in addition to the effects of her sexual assault.

**ANSWER**:

Schewe admits that UIC's investigation determined that Schewe had committed no violation of UIC's Sexual Misconduct Policy, and denies the remaining allegations contained in Paragraph 102.

103.    Plaintiff Shepp has been robbed of a safe educational environment, free from sexual harassment, sexual hostility, and gender discrimination that students are promised when

they attend a federally-funded public university. Plaintiff Shepp has been forced to endure a sexually hostile environment.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 103.

104.    Additionally, Defendant UIC's, Defendant Diaz's, and/or Defendant Truelove's decision to not move forward with Plaintiff Shepp's report to the Defendant UIC's Title IX concerning Defendant Schewe's inappropriate behavior and sexual misconduct (thus minimizing her complaint) has contributed to the hostile environment that Plaintiff Shepp has been forced to endure.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 104.

105.    Plaintiff Lorenz did not feel safe in Defendant UIC's Criminology, Law, and Justice Department as a proximate result of Defendant Schewe's sexually inappropriate behavior that was directed at her, as well as the sexually predatory behavior he has exhibited toward other Plaintiffs. Put simply, Plaintiff Lorenz was robbed of a safe educational environment that students are promised when they attend a federally-funded public university—Plaintiff Lorenz was forced to endure a sexually hostile environment since the night she was assaulted.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 105.

106.    Additionally, that Defendant UIC, Defendant Diaz, and/or Defendant Truelove failed to find any of Defendant Schewe's behavior on August 10, 2016 to be in violation of Defendant UIC's Comprehensive Policy regarding Dating Violence, Domestic Violence, Stalking and Sexual Assault is absurd and has directly contributed to the hostile environment that

Plaintiff Lorenz was forced to endure, in addition to the effects of the sexual harassment.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 106.

107.    Plaintiff Kirkner has been robbed of a safe educational environment, free from sexual harassment, sexual hostility, and gender discrimination that students are promised when they attend a federally-funded public university. Plaintiff Kirkner has been forced to endure a sexually hostile environment since the night of her assault.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 107.

108.    Additionally, Defendant UIC's, Defendant Diaz's, and/or Defendant Truelove's decision to not move forward with Plaintiff Kirkner's report to the Defendant UIC's Title IX concerning Defendant Schewe's inappropriate behavior and sexual misconduct (thus minimizing her complaint) has contributed to the hostile environment that Plaintiff Kirkner has been forced to endure.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 108.

109.    Plaintiff Malone has been robbed of a safe educational environment, free from sexual harassment, sexual hostility, and gender discrimination that students are promised when they attend a federally-funded public university. Plaintiff Malone has been forced to endure a sexually hostile environment.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 109.

110.    Additionally, Defendant UIC's, Defendant Diaz's, and/or Defendant Truelove's

decision to not move forward with each students' reports to the Defendant UIC's Title IX concerning Defendant Schewe's inappropriate behavior and sexual misconduct (thus minimizing her complaint) has contributed to the hostile environment that Plaintiff Malone has been forced to endure.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 110.

111.    Plaintiff Fry has been robbed of a safe educational environment, free from sexual harassment, sexual hostility, and gender discrimination that students are promised when they attend a federally-funded public university. Plaintiff Fry has been forced to endure a sexually hostile environment.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 111.

112.    Additionally, Defendant UIC's, Defendant Diaz's, and/or Defendant Truelove's decision to not move forward with Plaintiff Fry's report to the Defendant UIC's Title IX concerning Defendant Schewe's inappropriate behavior and sexual misconduct (thus minimizing her complaint) has contributed to the hostile environment that Plaintiff Fry has been forced to endure.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 112.

## LEGAL CLAIMS

**FIRST CLAIM FOR RELIEF**
**AGAINST DEFENDANT UIC**
**Deliberate Indifference Resulting in Hostile Environment in Violation of Title IX**
**(As to All Plaintiffs)**

Schewe makes no answer to this Court, which is not directed at him.

**SECOND CLAIM FOR RELIEF**
**AGAINST DEFENDANT UIC**
**Deliberate Indifference Resulting in Sexual Harassment (Unwanted Sexual Contact) in**
**Violation of Title IX**
**(As to Plaintiff O'Callaghan)**

Schewe makes no answer to this Court, which is not directed at him.

**THIRD CLAIM FOR RELIEF**
**AGAINST DEFENDANT UIC**
**Deliberate Indifference Resulting in Hostile Environment in Violation of Title IX**
**(As to Plaintiff O'Callaghan)**

Schewe makes no answer to this Court, which is not directed at him.

**FOURTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT UIC**
**Erroneous Outcome in Violation of Title IX**
**(As to Plaintiff O'Callaghan)**

Schewe makes no answer to this Court, which is not directed at him.

**FIFTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT UIC**
**Erroneous Outcome in Violation of Title IX**
**(As to Plaintiff Lorenz)**

Schewe makes no answer to this Court, which is not directed at him.

**SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHEWE**
**Sexual Harassment in Violation of the Fourteenth Amendment to the Constitution of the**
**United States of America**
**(Pursuant to 42 U.S.C. § 1983)**
**(As to Plaintiffs Kirkner, Lorenz, Malone, and Fry)**

166.    Plaintiffs re-allege all prior paragraphs of the Complaint as if set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 165

as if fully set forth herein.

167.    Under the Fourteenth Amendment, Plaintiffs had the right as public university

students to personal security and bodily integrity and Equal Protection of Laws.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 167.

168.    Defendant Schewe sexually harassed Plaintiffs Kirkner, Lorenz, Malone, and Fry while he was a state actor acting in his individual capacity under the color of state law.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 168.

169.    Defendant Schewe subjected Plaintiffs Kirkner, Lorenz, Malone, and Fry to violations of their right to personal security and bodily integrity and Equal Protection of Laws by subjecting them each to egregious sexual harassment while Plaintiffs were visiting Defendant Schewe's boat on the occasions included, but not limited to, in the General Allegations section of this Complaint.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 169.

170.    Defendant Schewe subjected Plaintiffs to sexual harassment that was so severe and objectively offensive that it violated Plaintiffs' constitutional rights.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 170.

171.    Defendant Schewe was in a direct supervisory and evaluative role over Plaintiffs Kirkner, Lorenz, Malone, and Fry.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 171.

172.    Defendant Schewe's conduct constituted disparate treatment of females and had a disparate impact on female graduate students.

**ANSWER**:

Schewe denies the allegation contained in Paragraph 172.

173.    Plaintiffs have had their academic life and standing disrupted, and have personally suffered emotional and psychological distress, all as a direct and proximate result of Defendant Schewe's sexual harassment and continued presence on Defendant UIC's campus.

**ANSWER**:

Schewe does not have sufficient information upon which to form a belief as to the truth or falsity of the allegations, concerning the emotional or psychological status of the Plaintiffs or their perceptions of causes of any distress. Schewe denies sexually harassing any individual, or that Plaintiffs have had their academic life or standing disrupting by any actions of Schewe.

174.    Defendant Schewe's conduct as described herein violated Plaintiff' clearly established and articulated constitutional rights of which a reasonable person would have known.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 174.

175.    Defendant Schewe's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiffs' rights such that punitive damages are appropriate.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 175.

176.    As a result of the foregoing, Plaintiffs have suffered extensive damages.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 176.

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHEWE**
**Hostile Environment in Violation of the Fourteenth Amendment to the Constitution of the**
**United States of America Pursuant to 42 U.S.C. § 1983**
**(As to all Plaintiffs)**

177.     Plaintiffs re-allege all prior paragraphs of the Complaint as if set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 176

of his Answer as if fully set forth herein.

178.     Under the Fourteenth Amendment, Plaintiffs had the right as public university

students to personal security, bodily integrity, and Equal Protection of Laws.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 178.

179.     Defendant Schewe sexually harassed Plaintiffs O'Callaghan, Shepp, Lorenz,

Kirkner, Malone, and Fry while he was a state actor acting in his individual capacity under the

color of state law.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 179.

180.     Defendant Schewe engaged in non-consensual sexual contact with Plaintiff

O'Callaghan, while she was unconscious and/or otherwise unable to consent, while he was a

state actor acting in his individual capacity under the color of state law.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 180.

181.     Defendant Schewe subjected Plaintiffs to sexual harassment and unwanted sexual

contact that was so severe and objectively offensive that it violated Plaintiffs' constitutional

rights.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 181.

182.    The physical and verbal conduct committed by Defendant Schewe was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Plaintiffs' work or academic performance, or creating an intimidating, hostile, or offensive environment for working, learning, or living on campus.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 182.

183.    The environment created from Defendant Schewe's conduct was hostile based on the circumstances, including but not limited to the frequency of the conduct, the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the physically threatening and humiliating nature of the conduct.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 183.

184.    The environment resulting from Defendant Schewe's conduct also constitutes a hostile environment.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 184.

185.    Defendant Schewe's conduct as described herein violated Plaintiffs' clearly established constitutional rights of which a reasonable person would have known.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 185.

186.     Defendant Schewe's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiffs' rights such that punitive damages are appropriate.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 186.

187.     As a result of the foregoing, Plaintiffs have suffered extensive damage.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 187.

### EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHEWE
### Negligence
### (As to Plaintiff O'Callaghan)

188.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 187 of his Answer as if fully set forth herein.

189.     In the November 5, 2017 email that Defendant Schewe sent to Plaintiff O'Callaghan, after the sexual assault that took place on November 2, 2017, Defendant Schewe admitted to being attracted to Plaintiff O'Callaghan on the evening of the assault, that he was craving relationship, that there was a power disparity between him and Plaintiff O'Callaghan, that he "should have been more of an adult that night," and that he "should have shown more restraint. Talked more and assumed less."

**ANSWER**:

Schewe denies a sexual assault, that his email of November 5, 2017 admitted an attraction to O'Callaghan on the evening of November 2, 2017, or that it admitted a power disparity between him and O'Callaghan.  Schewe admits the remaining allegations contained in Paragraph

189.

190.    Defendant Schewe admitted to Almethia Franklin, a witness in Defendant UIC's internal investigation, that he had sexual relations with Plaintiff O'Callaghan on the evening of November 2, 2017.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 190.

191.    On or about the evening of November 2, 2017, Defendant Schewe had a duty to exercise due care and caution for the safety of Plaintiff O'Callaghan.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 191.

192.    Notwithstanding the aforesaid duty, Defendant Schewe was guilty of one or more of the following negligent and/or reckless acts or omissions:

   a.  Failed to exercise caution towards Plaintiff O'Callaghan;
   b.  Failed to exercise due care in his physical interactions with Plaintiff O'Callaghan;
   c.  Because of his intoxication, engaged in sexual misconduct that included but was not limited to touching of Plaintiff O'Callaghan's body without consent and performing oral sex on Plaintiff O'Callaghan sans consent;
   d.  Because of his intoxication, failed to cease making sexual advances towards Plaintiff O'Callaghan despite her never consenting to these advances;
   e.  While under the influence of alcohol and without any form of consent made repeated sexual advances towards Plaintiff O'Callaghan; and
   f.  While under the influence of alcohol and without any form of consent sexually assaulted Plaintiff O'Callaghan in his apartment.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 192.

193.    As a result of one or more of the foregoing negligent acts or omissions, Plaintiff O'Callaghan suffered bodily harm as caused by Defendant Schewe.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 193.

194.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions of Defendant Schewe, Plaintiff O'Callaghan has had her life negatively altered, her academic life and standing disrupted, and has personally suffered emotional and psychological distress, all as a direct and proximate result of Defendant Schewe's negligence.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 194.

195.     Plaintiff O'Callaghan has lost great gains that would have otherwise been made and acquired, will in the future lose gains she would have made and acquired, and has and continues to be impaired from going about her daily affairs, all to Defendant Schewe's damage.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 195.

196.     Plaintiff O'Callaghan reserves the right to seek punitive damages.

**ANSWER**:

Schewe denies that O'Callaghan is entitled to punitive or any other damages.

### NINTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHEWE
**Battery**
**(As to Plaintiff O'Callaghan)**

197.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 165 as if fully set forth herein.

198.     Defendant Schewe's physical contact with Plaintiff O'Callaghan at his apartment

on the evening of November 2, 2017 was intentional, offensive, and harmful.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 198.

199.    As a result of the offensive physical contact, Plaintiff O'Callaghan suffered

significant and ongoing mental and emotional distress.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 199.

200.    Plaintiff O'Callaghan did not consent to the offensive physical contact.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 200.

201.    As a direct and proximate result of the foregoing battery by Defendant Schewe,

Plaintiff O'Callaghan has sustained severe and substantial emotional and/or mental distress and

damages, and she is entitled to recover compensatory damages and other damages related thereto.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 201.

**TENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT SCHEWE**
**Intentional Infliction of Emotional Distress**
**(As to Plaintiff O'Callaghan)**

202.    Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 201

of his Answer as if fully set forth herein.

203.    Defendant Schewe was employed in a supervisory position with extensive control

and power over Plaintiff O'Callaghan's academic and professional future and acted intentionally

to cause Plaintiff O'Callaghan serious, long lasting, and potentially permanent mental, emotional, and psychological stress.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 203.

204.    Defendant Schewe's conduct as alleged herein was extreme and outrageous.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 204.

205.    Defendant Schewe's conduct intentionally caused mental and/or emotional injuries to Plaintiff O'Callaghan and/or recklessly disregarded the high probability that his actions would likely result in mental and/or emotional injury and distress to Plaintiff O'Callaghan.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 205.

206.    Defendant Schewe's conduct is the proximate cause of Plaintiff O'Callaghan's serious mental, emotional, and psychological distress that continues to interfere with her daily life, as well as academic and career advancement.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 206.

207.    Defendant Schewe, while engaging in the aforementioned conduct, did recklessly inflict and proximately cause substantial mental, emotional, and psychological distress, indignity, embarrassment, and humiliation upon Plaintiff O'Callaghan.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 207.

208.     As a direct and proximate result of the foregoing intentional infliction of emotional distress by Defendant Schewe, Plaintiff O'Callaghan has sustained severe, substantial, and long lasting emotional and/or mental distress and damages, and she is entitled to recover compensatory damages and other damages related thereto.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 208.

209.     The mental anguish suffered by Plaintiff O'Callaghan (primarily as a result of the nonconsensual sexual acts committed upon her by Defendant Schewe) was so severe that no reasonable person could be expected to endure it.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 209.

210.     As a result of the foregoing, Plaintiff O'Callaghan has suffered extensive damages.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 210.

**ELEVENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT SCHEWE**
**Illinois Gender Violence Act (740 ILCS 82/)**
**(As to Plaintiff O'Callaghan)**

211.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 211 of his Answer as if fully set forth herein.

212.     The Illinois Gender Violence Act is designed to discourage the type of sexual violence that Defendant Schewe committed against Plaintiff O'Callaghan on the evening of

November 2, 2017.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 212.

213.     The November 2, 2017 incident against Plaintiff O'Callaghan was gender-related violence committed by Schewe as defined by the Act.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 213.

214.     The November 2, 2017 incident was a battery under the laws of Illinois and was committed on the basis of Plaintiff O'Callahan's sex.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 214.

215.     The November 2, 2017 incident was a physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 215.

216.     Defendant Schewe personally committed the gender-related violence against Plaintiff O'Callaghan.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 216.

217.      As a result of the gender-based violence, Plaintiff has suffered extensive damages.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 217.

**TWELVTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT SCHEWE**
**Sexual Harassment in Violation of the Fourteenth Amendment to the Constitution of the**
**United States of America**
**(Pursuant to 42 U.S.C. § 1983)**
**(As to Plaintiff O'Callaghan)**

218.     Plaintiff O'Callaghan re-alleges all prior paragraphs of the Complaint as it set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 165 as if fully set forth herein.

219.     Under the Fourteenth Amendment, Plaintiff O'Callaghan had the right as a public university student to personal security and bodily integrity and Equal Protection of Laws.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 219.

220.     Defendant Schewe sexually harassed Plaintiff O'Callaghan while he was a state actor acting in his individual capacity under the color of state law.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 220.

221.     Defendant Schewe subjected Plaintiff O'Callaghan to violations of her right to personal security and bodily integrity and Equal Protection of Laws by subjecting her to egregious sexual harassment on the evening of November 2, 2017.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 221.

222.     Defendant Schewe subjected Plaintiff O'Callaghan to sexual harassment and unwanted sexual contact that was so severe and objectively offensive that it violated Plaintiff

O'Callaghan's constitutional rights.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 222.

223.    The physical contact that Defendant Schewe made with Plaintiff O'Callaghan was intentional contact and included rubbing or groping Plaintiff O'Callaghan on her back and eventually culminated in a sexual assault on the evening of November 2, 2017. Given the extent of this physical touching, the locations on Plaintiff O'Callaghan body touched by Defendant Schewe, and the manner of the touching by Defendant Schewe, it was sexual in nature.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 223.

224.    Plaintiff O'Callaghan did not consent to Defendant Schewe touching here in a sexual manner.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 224.

225.    Defendant Schewe was in a direct supervisory and evaluative role over Plaintiff O'Callaghan.

**ANSWER**:

Schewe admits that he was in a direct supervisory and evaluative role over O'Callaghan, but only after January 2018.

226.    Defendant Schewe engaged in multiple instances of non-consensual sexual contact with Plaintiff O'Callaghan.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 226.

227.     Defendant Schewe's behavior on the evening of November 2, 2017 constituted non- consensual contact with Plaintiff O'Callaghan.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 227.

228.     Defendant Schewe's conduct constituted disparate treatment of females and had a disparate impact on female students. Male students did not have to attend UIC with the fear of being sexually harassed and/or assaulted by Defendant Schewe.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 228.

229.     Plaintiff O'Callaghan has had her academic life and standing disrupted, and has personally suffered emotional and psychological distress, all as a direct and proximate result of Defendant Schewe's sexual harassment.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 229.

230.     Defendant Schewe's conduct as described herein violated Plaintiff O'Callaghan's clearly established constitutional rights of which a reasonable person would have known.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 230.

231.     Defendant Schewe's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiff O'Callaghan's rights such that punitive damages are appropriate.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 231.

232.     As a result of the foregoing, Plaintiff O'Callaghan suffered extensive damages.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 232.

## THIRTEENTH CLAIM FOR RELIEF
## AGAINST DEFENDANT SCHEWE
**Hostile Environment in Violation of the Fourteenth Amendment to the Constitution of the United States of America**
**(Pursuant to 42 U.S.C. § 1983) (As to Plaintiff O'Callaghan)**

233.     Plaintiff O'Callaghan re-alleges all prior paragraphs of the Complaint as if set out here in full.

**ANSWER**:

Schewe incorporates by reference the allegations contained in Paragraphs 1 through 233 of his Answer as if fully set forth herein.

234.     Under the Fourteenth Amendment, Plaintiff O'Callaghan had the right as a public university student to personal security and bodily integrity and Equal Protection of Laws.

**ANSWER**:

Schewe admits the allegations contained in Paragraph 234.

235.     Defendant Schewe sexually harassed Plaintiff O'Callaghan while he was a state actor acting in his individual capacity under the color of state law.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 235.

236.     Defendant Schewe subjected Plaintiff O'Callaghan to sexual harassment and unwanted sexual contact that was so severe and objectively offensive that it violated Plaintiff O'Callaghan's constitutional rights.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 236.

237.    The physical and verbal conduct by Defendant Schewe was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Plaintiff O'Callaghan's work or academic performance or creating an intimidating, hostile, or offensive environment for working, learning, or living on campus.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 237.

238.    The environment created from the conduct of Defendant Schewe was hostile based on the circumstances, including but not limited to, the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the physically threatening and humiliating nature of the conduct.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 238.

239.    The environment resulting from Defendant Schewe's sexual assault of Defendant O'Callaghan constitutes a hostile environment:

a.  Plaintiff O'Callaghan considered not returning to UIC after the assault.

b.  The resulting investigation (that failed to substantiate her claims) weighed on Plaintiff O'Callaghan heavily.

**ANSWER**:

Schewe has insufficient information upon which to form a belief as to the truth or falsity of the allegations as to Plaintiff O'Callaghan's subjective feelings, and denies the remaining allegations contained in Paragraph 239.

240.    Defendant Schewe's conduct as described herein violated Plaintiff O'Callaghan's

clearly established constitutional rights of which a reasonable person would have known.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 240.

241.    Defendant Schewe's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiff O'Callaghan's rights such that punitive damages are appropriate.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 241.

242.    As a result of the foregoing, Plaintiff O'Callaghan suffered extensive damages.

**ANSWER**:

Schewe denies the allegations contained in Paragraph 242.

**FOURTEENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT DIAZ**
**Violation of Due Process under the United States Constitution**
**(As to Plaintiffs Shepp, Kirkner, and Fry)**

Schewe makes no answer to this Court, which is not directed at him.

**FIFTEENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT DIAZ**
**Violation of Due Process under the United States Constitution**
**(As to Plaintiff O'Callaghan)**

Schewe makes no answer to this Court, which is not directed at him.

**SIXTEENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT TRUELOVE**
**Violation of Due Process under the United States Constitution**
**(As to Plaintiffs Shepp, Kirkner, and Fry)**

Schewe makes no answer to this Court, which is not directed at him.

**SEVENTEENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT TRUELOVE**
**Violation of Due Process under the United States Constitution**
**(As to Plaintiff O'Callaghan)**

Schewe makes no answer to this Court, which is not directed at him.

WHEREFORE, Defendant, Paul Schewe, denies that Plaintiffs, Erin O'Callaghan,

Veronica Shepp, Katherine Lorenz, Anne Kirkner, Sarah Malone, and Marlee Fry are entitled to

any relief whatsoever, and prays for the entry of judgment in his favor.

Respectfully Submitted,

PAUL SCHEWE

By: /s Elvis D. Gonzalez
One of His Attorneys

Elvis D. Gonzalez (ARDC NO. 6280115)
egonzalez@elvisgonzalezltd.com
ELVIS GONZALEZ, LTD.
233 South Wacker Drive, Suite 6149
Chicago, Illinois 60606
312-558-9779
407131.6-12590.00100