**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIN O'CALLAGHAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 19-cv-06271 |
| ) | |
| THE BOARD OF TRUSTEES OF THE ) | Hon. John J. Tharp, Jr. |
| UNIVERSITY OF ILLINOIS, et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM</u>**

SALVATORE PRESCOTT PORTER
& PORTER, PLLC

Julie B. Porter (No. 6243787)
Katie Hill (No. 6293005)
Sarah L. Bakker (No. 6316661)
1010 Davis Street
Evanston, IL 60201
P: (312) 283-5711
F: (312) 724-8353
porter@spplawyers.com
hill@spplawyers.com
bakker@spplawyers.com

*Attorneys for Defendant The Board of
Trustees of the University of Illinois*

**INTRODUCTION**

In their original complaint, Plaintiffs alleged that they experienced inappropriate behavior from their professor, Defendant Paul Schewe, and Plaintiff Erin O'Callaghan alleged that Schewe sexually assaulted her. They also claimed that the University's investigations of those claims were biased and reached an erroneous outcome. In addition to suing Schewe and the University employees who conducted the investigations in their individual capacities, Plaintiffs also sued the University for deliberate indifference and erroneous outcome under Title IX.

The University moved to dismiss the original complaint because Plaintiffs failed to allege facts supporting the legal elements of their claims: Plaintiffs did not allege that the University had actual knowledge of Schewe's purported misconduct, and they did not plausibly allege that the University's response to their claims was clearly unreasonable as a matter of law. Additionally, Plaintiffs misapplied the erroneous-outcome cause of action.

Plaintiffs' First Amended Complaint (FAC) includes a handful of new allegations, including that two University employees, who had "official capacity to take corrective action," had "actual knowledge" of Defendant Schewe's inappropriate behavior. These new allegations, however, are inadequate to cure the Complaint's problems because: (1) Plaintiffs do not claim that any appropriate individuals had knowledge, and (2) the knowledge those individuals purportedly had is not sufficiently specific. Nor does the FAC in any way address the misapplication of the erroneous-outcome cause of action that the University identified in its motion to dismiss the original complaint. By failing to respond to that argument, Plaintiffs forfeit their erroneous-outcome claims.

1

Taking as true the allegations in the FAC, as the University must on a Rule 12(b)(6) motion to dismiss, Plaintiffs fail to state a claim as a matter of law. This Court should grant the motion to dismiss the claims against the University.

## BACKGROUND

Aside from the new section on "Actual Notice and Deliberate Indifference," the FAC is nearly identical to the original complaint. As such, the University will defer to the more fulsome factual background included in its original motion to dismiss, *see* Mot. Dismiss Compl. at 2–6, ECF No. 13, attached as Ex. A, and will focus here on the new allegations in the FAC.

Plaintiffs assert that Sarah Ullman, a Professor of Criminology, Law, and Justice at the University, "had actual notice that Defendant Schewe posed a risk to female students" before they experienced the alleged "discrimination and harassment." FAC ¶¶ 85–88, ECF No. 31. Ullman, they claim, notified University officials "with the capacity to take corrective action" that Schewe "posed a substantial risk." *Id.* ¶ 89. The University purportedly took no action in response. *Id.* ¶¶ 91–92. And Ullman, herself, was allegedly "a person with official capacity to take corrective action." *Id.* ¶ 92.

Danielle Smith, a business manager with the University's Department of Criminology, Law, and Justice, allegedly had "capacity to take corrective action." *Id.* ¶ 95. The FAC asserts that prior to the alleged harassment Plaintiffs experienced, Smith had "actual knowledge of Defendant Schewe's propensity for inappropriate behavior with women." *Id.* ¶ 96. Smith's knowledge allegedly included that: Schewe was "handsy" with female students; he made inappropriate sexual comments; he pressured female students to use drugs on his boat; and Schewe pursued a sexual relationship with Dr. Jessica Bird, a visiting professor, despite her denials of his advances. *Id.* ¶¶ 100, 102. Plaintiffs further assert that Smith was aware of "ongoing harassment, discrimination,

2

and/or retaliation against Plaintiffs." *Id.* ¶ 101. Despite this purported knowledge, Smith did not take any corrective action with respect to Schewe. *Id.* ¶ 97.

In the FAC, Plaintiffs reassert their claims that the University was deliberately indifferent to Schewe's conduct and that the University reached erroneous outcomes in its investigations of Schewe's conduct.1

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A plaintiff must plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *See Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) (dismissing Title IX claims under Rule 12(b)(6)).

**I.     Plaintiffs' Title IX claims against the University fail because Plaintiffs insufficiently allege that the University had actual knowledge of and was deliberately indifferent to Schewe's conduct**

Counts 1 and 2 of the FAC claim that the University was deliberately indifferent to Schewe's conduct and that the University's indifference resulted in a hostile environment for all

---

1 The FAC also includes a number of other minor alterations, including the addition of The Board of Trustees of the University of Illinois as a defendant and the combination of the second and third claims of deliberate indifference as to Plaintiff O'Callaghan pleaded in the original complaint into a single claim (now the second claim in the FAC). *Compare* Compl. ¶¶ 121–43, *with* FAC ¶¶ 139–52.

3

Plaintiffs and in unwanted sexual conduct against O'Callaghan.[2] For a university to be liable under Title IX, a university official, "who at a minimum has authority to take corrective measures," must have: (1) had actual knowledge of misconduct that created a serious risk to students, and (2) responded with deliberate indifference to the misconduct. *See Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998) (when Title IX claim is based on teacher's alleged misconduct, plaintiff must prove school's actual notice of and deliberate indifference to that misconduct); *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) (same). Even with their additional allegations in the FAC, Plaintiffs have not sufficiently pleaded their claim.

### A. Plaintiffs' actual knowledge allegations are not sufficiently specific or directed to appropriate individuals under Title IX

The Seventh Circuit has held that under *Gebser*, the school's actual knowledge must be specific: "[U]nder the Supreme Court's formula, the plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct, and must also prove that the officials having that knowledge decided not to act on it." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004), abrogated on other grounds by *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009). If a plaintiff alleges knowledge of a known or obvious risk and ignorance of the risk in an effort to establish knowledge by recklessness, the risks must be "so great that they are almost certain to materialize if nothing is done." *Id.* (affirming summary judgment for university where plaintiff alleged sexual harassment by professor, but university did not know professor to be a "serial harasser").

---

[2] The University does not concede that the facts Plaintiffs allege in Count 1, if true, constitute a hostile environment under the law. For purposes of this motion, however, the University focuses solely on the actual-knowledge and deliberate-indifference requirements for Counts 1 and 2.

4

This was the key issue in another Seventh Circuit case, *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869 (7th Cir. 2012). There, an eighth grader sued his school district under Title IX after suffering sexual abuse by his teacher. *Id.* at 870. The teacher's colleagues had complained to the superintendent that the teacher "blurred the line" by treating students as friends, and the superintendent was aware of one colleague's belief that the student had a crush on the teacher. *Id.* at 872. But this was insufficient to impose Title IX liability on the school: "[T]o know that someone suspects something is not to know the something and does not mean the something is obvious." *Id.*; *see also Doe v. Galster*, 768 F.3d 611, 617–18 (7th Cir. 2014) ("The standard set out in *Davis* is not satisfied by knowledge that something might be happening and could be uncovered by further investigation. The standard is 'actual knowledge.' School administrators have actual knowledge only of the incidents that they witness or that have been reported to them.").

Even with the additional allegations in the FAC, Plaintiffs have not met this standard.

### 1. *Allegations regarding Ullman*

Plaintiffs claim that Ullman "had actual notice that Defendant Schewe posed a risk to female students." FAC ¶ 88. But Plaintiffs do not state *what* Ullman allegedly knew that would make her think that Schewe posed a risk to female students. Nor do they explain what the purported risk to female students was. With only this vague assertion in paragraph 88, Plaintiffs' claim does not "include 'factual content' sufficient to allow the court 'to draw the reasonable interference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trustees of the Univ. of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (affirming dismissal under 12(b)(6) where complaint provided insufficient facts and relied instead on conclusory assertions).

As such, Plaintiffs have not established that any "risk" Ullman was purportedly aware of was so known or obvious as to establish the University's knowledge through recklessness.

5

*Delgado*, 367 F.3d at 672. And though Plaintiffs allege that Ullman notified the University "authorities, including but not limited to college Dean(s) and/or officials within the Department of Social Sciences or other officials with capacity to take corrective action" that Schewe posed some unspecified risk for some unspecified reason, FAC ¶ 89, this still lacks any detail of what conduct Ullman allegedly reported or why it posed a "substantial risk to female students," and, as such, does not satisfy the actual-knowledge standard.

### 2. *Allegations regarding Danielle Smith*

Plaintiffs allege that Danielle Smith knew that Schewe was "handsy" with female students and made inappropriate sexual comments, pressured female students to use drugs on his boat, and pursued a sexual relationship with Professor Bird despite her opposition. *Id.* ¶¶ 100, 102. The FAC asserts that, based on this purported knowledge, Smith knew that "Schewe posed a risk of sexually assaulting female students." *Id.* ¶ 99. These allegations do not meet the actual-knowledge standard either.

Assuming the allegations are true (as the University understands the Court must do on a 12(b)(6) motion), knowledge that someone is "handsy" and makes sexual comments, and that he pursued a relationship with a peer despite that peer's lack of interest, does not translate into knowledge of risks "so great that they are almost certain to materialize if nothing is done," *Delgado*, 367 F.3d at 672, that Schewe would sexually assault a student. For example, in *Doe v. St. Francis Sch. Dist.*, teachers reported to the principal that they suspected an improper relationship between a teacher and a student. 694 F.3d at 872. The Seventh Circuit held that the principal's and superintendent's knowledge of suspicions, even where those suspicions turned out to be of the actual misconduct that occurred, were insufficient to be an obvious risk sufficient to establish actual knowledge. *Id.* at 872–73. Here, even if Smith knew that Schewe exhibited the

6

behavior that Plaintiffs allege in paragraph 100, that suspicion is insufficient to establish actual knowledge of a risk that Schewe would sexually assault a student.

### 3.  *Neither Smith nor Ullman is a relevant "official" for Title IX purposes*

The Ullman and Smith allegations suffer from the additional problem that the knowledge must be by an individual "who at a minimum has authority to take corrective measures." *Id.* at 871. The FAC states—without any supporting facts—that Ullman had "official capacity to take corrective action" and that Smith "was an official with the ability to take corrective action." FAC ¶¶ 87, 95. Although the Supreme Court has not provided a clear definition of who qualifies as an "official" in this context, circuit courts require that the official at least have supervisory authority, or be able to initiate investigations or make recommendations regarding suspension and termination. *See, e.g.*, *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1255 (11th Cir. 2010) (as the "highest-ranking school official," principal was appropriate person under Title IX because he "could 'initiate corrective action' or place 'other restrictions' on an offending teacher in response to a sexual harassment complaint, even if he could not take final adverse employment actions such as terminating the teacher"); *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 457 (8th Cir. 2009) (school teacher not sufficiently high ranking to be "appropriate person" under Title IX, even where teacher had a duty to report misconduct to school administration, but principal was because could "reprimand, further supervise, suspend, or even fire" teacher); *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002) ("school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX"); *see also Baynard v. Malone*, 268 F.3d 228, 239 (4th Cir. 2001) (minority position that even a principal is not an appropriate official under Title IX unless principal has "the power to hire, fire, transfer, or suspend teachers"). Courts agree that lower-level

7

employees do not qualify as appropriate officials, and for good reason: "Title IX does not contemplate a definition of 'corrective measures' so broad as to include the mere ability to report suspicions of discriminatory conduct to someone with the authority to stop the abuse or control the harasser. Such an approach would expand the scope of Title IX liability beyond that which Congress intended and would functionally open all educational institutions to liability based on a theory of respondeat superior or constructive notice." *Plamp*, 565 F.3d at 457.

The Seventh Circuit does not appear to have directly addressed the question of who constitutes a qualifying official under Title IX. The Title IX cases in the Seventh Circuit, however, all consider whether an individual at the top of the hierarchy—like a principal, superintendent, or dean—had knowledge. *See, e.g.*, *St. Francis Sch. Dist.*, 694 F.3d at 872 (no liability under Title IX where principal and superintendent allegedly knew only of suspicions of teacher/student relationship); *Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 381, 383, 387–88 (7th Cir. 2012) (no liability under Title IX where graduate student alerted Department Chair and Graduate Dean who had "authority over" the allegedly harassing professor); *Trentadue v. Redmon*, 619 F.3d 648, 650–51, 653 (7th Cir. 2010) (no liability under Title IX where principal and superintendent did not know of teacher's abuse of student); *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 606 (7th Cir. 2008) (same).

According to the FAC, Ullman is simply a professor at UIC, and Smith is a business manager who administers various school programs. FAC ¶¶ 85, 94. There are no factual allegations that either had supervisory authority over professors, nor is it plausible to infer that a non-supervisory professor or a department business manager has the authority to investigate or discipline the University's professors. While Plaintiffs baldly assert that Ullman and Smith had capacity to take corrective action, that is not a factual statement but merely a legal conclusion that

8

is not entitled to an assumption of truth on a motion to dismiss. *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) (affirming dismissal under 12(b)(6) and noting that "even at the motion to dismiss stage, [courts] are 'not obliged to accept as true legal conclusions or unsupported conclusions of fact'"). Thus, Plaintiffs have not adequately alleged the University had actual knowledge.

### B.  Plaintiffs do not credibly allege deliberate indifference

Plaintiffs did not amend their deliberate-indifference allegations. They simply state that because Ullman and Smith are alleged to have had actual knowledge of Schewe's misconduct, the University allegedly had knowledge and was deliberately indifferent by failing to take corrective actions. *See* FAC ¶¶ 135–36. As already explained, however, the actual-knowledge allegations are insufficient to establish that any official at the University with the ability to take corrective action had actual knowledge of misconduct or was reckless to the obvious and inevitable risk of misconduct. *See Delgado*, 367 F.3d at 672. And without knowledge of misconduct, the University's purported lack of action was not "clearly unreasonable in light of the known circumstances." *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Because the deliberate-indifference allegations in the FAC are nearly identical to the allegations in the original complaint, the University's original arguments in support of dismissing those claims apply equally here. The University renews here the arguments made in its motion to dismiss the original complaint. *See* Mot. Dismiss Compl. at 10–12, Ex. A. Because Plaintiffs fail to allege facts demonstrating that the University actually knew of and was deliberately indifferent to sexual harassment or a hostile environment, this Court should dismiss Counts 1 and 2.

9

### II. Plaintiffs forfeit their erroneous-outcome claims by failing to respond to the motion to dismiss

Counts 3 and 4 in the FAC reassert O'Callaghan's and Lorenz's "erroneous outcome" claims, which claim that the University violated Title IX by reaching the wrong result in its investigations of their complaints. The erroneous-outcome claims in the FAC are identical to those in the original complaint and allege that the University "fail[ed] to substantiate [Plaintiffs'] allegations that were supported by a bevy of witnesses" and that the "outcome of the internal investigation…was incorrect given the witness testimony and evidence." FAC ¶¶ 157–58, 168–69.

The University moved to dismiss the erroneous outcome claims in the original complaint because Plaintiffs misapplied the cause of action—Plaintiffs in this case were not wrongly disciplined based on sex discrimination, as required to state an erroneous-outcome claim, *see, e.g.*, *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 952–57 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019). Nor do Plaintiffs have any right to a preferred outcome in the University's investigations of their claims. *See Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 630 (7th Cir. 2016). Plaintiffs did not amend any allegations in the FAC related to their erroneous-outcome claims, nor did they respond to the University's motion to dismiss those claims. By ignoring the University's arguments for dismissal, Plaintiffs forfeited their claims, and this Court should grant the original motion to dismiss the erroneous-outcome claims. *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 296 (7th Cir.), *reh'g denied* (June 25, 2018), *cert. denied*, 139 S. Ct. 601 (2018) ("a district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) ("by failing to respond responsively to the motion to dismiss…[plaintiff] forfeited her right to continue litigating her claim").

If the Court excuses Plaintiffs' failure to respond, the University renews its original arguments to dismiss the identical erroneous-outcome claims in the FAC. *See* Mot. Dismiss Compl. at 12–14, Ex. A. There is no erroneous-outcome cause of action on the facts alleged, and the Court should dismiss Counts 3 and 4 against the University.

## CONCLUSION

Defendant University requests that this Court grant its motion to dismiss Counts 1 through 4 for failure to state a claim.

Dated: February 21, 2020

Respectfully submitted,
SALVATORE PRESCOTT PORTER &
PORTER, PLLC

/s/ Sarah L. Bakker
Julie B. Porter
Katie Hill
Sarah L. Bakker
1010 Davis Street
Evanston, IL 60201
P: (312) 283-5711
F: (312) 724-8353
porter@spplawyers.com
hill@spplawyers.com
bakker@spplawyers.com

*Attorneys for Defendant The Board of Trustees of the University of Illinois*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  February 21, 2020                                                                 /s/ Sarah L. Bakker