**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN O'CALLAGHAN, VERONICA SHEPP, KATHERINE LORENZ, ANNE KIRKNER, SARAH MALONE, and MARLEE FRY | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNIVERSITY OF ILLINOIS AT CHICAGO, *et al*., | ) ) ) | |
| Defendants. | ) ) | Case No. 19-CV-6271 |
| _____ | ) ) | Judge John J. Tharp |
| PAUL SCHEWE, | ) ) | Magistrate Judge Weisman |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| ERIN O'CALLAGHAN, | ) ) | |
| Counter-Defendant. | ) | |

## DEFENDANT/COUNTER-PLAINTIFF PAUL SCHEWE'S MOTION FOR SANCTIONS

Defendant/Counter-Plaintiff, Paul Schewe ("Schewe"), by and through his attorneys, Elvis Gonzalez, Ltd. and Nesenoff & Miltenberg, LLP, and pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, seeks an order sanctioning Plaintiffs, Erin O'Callaghan, Katherine Lorenz, Anne Kirkner, Sarah Malone, Veronica Shepp, and Marlee Fry (collectively "the Plaintiffs"), for disobeying the Court's discovery order dated January 24, 2022. In support thereof, Schewe states as follows:

1

## I.  FACTUAL BACKGROUND

### A.  *The Discovery Requests at Issue.*

On September 24, 2021, Schewe propounded his First Set of Interrogatories and Requests to Produce on Plaintiffs.  Plaintiffs served their responses on October 25, 2021.  Thereafter, the parties held a telephonic LR37.2 conference on December 10, 2021.  At that time, Schewe's counsel identified Plaintiffs' responses to Requests to Produce Numbers 5, 6, 7, 8, 9, 10, and 19 as deficient for various reasons.  (See Schewe's Motion to Compel, Dkt. No. 75).  Requests to Produce Numbers 5 and 6 sought material concerning Plaintiffs' academic endeavors and career pursuits, including *inter alia*, research, grants, papers, examinations, dissertations, publications, and presentations, involving Schewe (collectively "the Works").  Requests to Produce Numbers 7 and 8 sought various categories of similar material, including journals, blog posts, presentations, and other disseminated writings, along with video or audio recordings and podcasts, related to Schewe's alleged conduct and other matters alleged in Plaintiffs' complaint. Request to Produce Number 9 sought communications amongst Plaintiffs, and with third-parties, related to Schewe's alleged conduct and various other matters alleged in Plaintiffs' complaint. Request to Produce Number 10 sought the same types of communications that were provided to, or obtained from, conferences, meetings, or events (collectively "the Communications").

### B.  *The Parties' Prior LR37.2 Conference, Schewe's Motion to Compel, and Plaintiffs' Agreement that Resolved Their Deficient Document Production.*

During the parties' LR37.2 conference, Plaintiffs' counsel, Michael Fradin, and counsel for Schewe, Nicholas Lewis and Elvis Gonzalez, discussed, *inter alia*, the lack of communications between the Plaintiffs in their document production as Plaintiffs had only produced a Facebook group chat and limited, selective direct text communications between

Malone and O'Callaghan. (See Declaration of Elvis D. Gonzalez, Exhibit A, ¶3). Mr. Fradin represented in words or substance that Plaintiffs were searching for, and would produce, additional responsive documents, but that he did not anticipate substantially more documents from Plaintiffs. (Ex. A, ¶4). He further committed to advising Schewe's counsel of further responsive documents by January 14, 2022. (Ex. A, ¶4). Following the parties' conference, Mr. Gonzalez circulated an e-mail, which stated:

> Hi Mike-
>
> To confirm our conversation, you have asked your clients to look for additional documents responsive to Requests to Produce Numbers 5, 6, 7, 8, 9, and 10, and will advise us by January 14 of additional responsive documents. To be clear, this includes not only materials within their possession, but also within their control, which obviously means having the legal right to obtain documents on demand. We also wish to remind your clients of their obligations to conduct a diligent and thorough search for responsive material as it is not our obligation to identify every potentially responsive article or document.
>
> Separately, I've looked at the income documents, and here's what we're missing:
>
> Kirkner 18 and 20, Malone 18, Fry 19 and 20, Lorenz 15, 18, 19, and 20. You have agreed to let us know by Tuesday of next week if your clients have possession of additional documents showing income for the years requested. If they do not, you will furnish us with authorizations to permit us to obtain the returns from the IRS.
>
> If this does not accurately reflect the substance of our conversation, please let us know.
>
> Thanks for your time, and have a good weekend.

(See E-mail dated December 10, 2021, Exhibit 1 to Gonzalez Decl., Ex. A). Mr. Fradin responded by stating he would need until the end of the following week to advise whether Plaintiffs possessed additional income documents because the e-mail identified more returns than the parties had discussed in their telephone conference. (Ex. A, ¶5). He further stated he would need to discuss the issue of IRS authorizations with his co-counsel. (Ex. A, ¶5). Plaintiffs did

not, however, advise of further responsive documents, and made no supplemental document production.  (See Dkt. No. 75, ¶3).

With scheduled depositions approaching, Schewe filed a Motion to Compel on January 17, 2022.  (See Dkt. No. 75).  After the Motion was filed, Plaintiffs produced 74 pages comprised of three academic articles, a tax return, and one e-mail transmitted by O'Callaghan to a third-party, forwarding a string of emails and a one-page document attachment.  A few days later, on January 21, 2022, counsel for the parties conferred again, concerning the issues raised in Schewe's Motion.  (Ex. A, ¶6).  At that time, the parties again specifically discussed direct communications between the Plaintiffs, including text messages and e-mails.  (Ex. A, ¶6).  During the conference, counsel for Plaintiffs, Annie Alonso, represented to Schewe's counsel, Elvis Gonzalez, that Plaintiffs maintained they did not possess further meaningful documents, but would search for, and produce, any additional responsive material.  (Ex. A, ¶6).  Mr. Gonzalez stated it was not credible that Plaintiffs had not been communicating electronically about the requested topics.  (Ex. A, ¶6).  Ms. Alonso reiterated she would seek any responsive material from Plaintiffs, and produce any such documents by February 1, 2022 to permit time for a review before the scheduled depositions.  (Ex. A, ¶6).

Following the conference, Mr. Gonzalez transmitted a confirming email, stating the following:

> Thanks for the time today, Annie.  To confirm our conversation, you will check with Ms. O'Callaghan as to whether she can obtain access to the "Grass Gets Greener" podcast and her "Voice for the Innocent" blog posts, as well as obtaining her dissertation.  One item I overlooked on our call is your client's panel discussion with the Women's Leadership Resource Center at UIC.  I would ask that you also check with her to confirm she has no documents or emails exchanged with those organizers.

4

You will also ask your clients about additional texts with one another to confirm they don't possess any additional messages, as well as asking Ms. O'Callaghan about additional emails with Ms. Palmer. You will also provide us the carrier and phone numbers for each plaintiff. You have agreed to produce any further supplemental documents by February 1 . . .

For any material received from third parties after depositions next month, we have agreed to continue plaintiffs' depositions for the limited purpose of examining them on matters raised by any documents we obtain in the future. If this doesn't accurately reflect our discussion, please let me know. Have a nice weekend.

(See E-mail dated January 21, 2022, Exhibit 2 to Gonzalez Decl., Ex. A). Plaintiffs' counsel did not respond to Mr. Gonzalez's e-mail. (Ex. A, ¶7).

On January 24, 2022, the parties reported their agreement to the Court. Based on the representations of all counsel, the Court denied Schewe's Motion to Compel as premature, and incorporated the agreement outlined above into its Order, stating: "Plaintiffs produced supplemental production, and to the extent additional documents are needed, they will be produced by 2/1/2022." (See Dkt. No. 79). Later that day on January 24, Plaintiffs produced 16 pages comprised of seven emails, and a one-page document attachment. In transmitting the documents by e-mail, Ms. Alonso stated:

I have talked to our clients and here is the summation:

1. Erin hasn't written her dissertation yet, so she doesn't have that.
2. She doesn't know who to contact for the podcast or the blog
3. No one has any further mental health records. For releases, do you have one you want them to sign? We use a specific one for our firm, and I know many firms have their own, so just let me know.
4. We object to the FERPA release to U of Cincy
5. I have included to this email more emails from Veronica and Anne with Ms. Palmer and a lawyer from the school.
6. I again asked about emails/texts between the parties, and I have been told that some of the clients don't have those phones, so they don't have those texts. I have asked the others to do another search and I will keep you posted.

(Ex. A, ¶9).  Plaintiffs did not produce any further Communications or Works before their depositions.

**C.    The Plaintiffs** ███████████████████████████████
███, **and Produce Over 7,000 Pages of Communications and Works During Their Depositions.**

Plaintiffs' depositions proceeded between February 8, 2022 and February 18, 2022.

Plaintiff, Anne Kirkner ("Kirkner"), was deposed on February 11, 2022.  When counsel for Co-Defendant, The Board of Trustees of the University of Illinois ("UIC"), attempted to ask her about the existence of text communications between the Plaintiffs, their counsel, Michael Fradin, interposed the first of many objections:[1]



---

[1] Various parties have designated certain discovery-related matter confidential under the Agreed Confidentiality Order.  (See Dkt. No. 71).  As such, Schewe has redacted references to material designated as confidential in the publicly available version of this Motion, and will provide unredacted copies to the Court and counsel of record.



(See Kirkner Tr., Exhibit B, 201:21-202:15). Mr. Fradin then went further, instructing Kirkner

not to answer when she was asked a question intended to ascertain whether a claimed privilege

potentially existed.



(See Ex. B, 203:24-204:22). Kirkner was later asked the following questions, and gave the

following answers:





(Ex. B, 206:22-208:3).

     Three days later on February 14, 2022, Plaintiff, Marlee Fry ("Fry") was deposed.

Counsel for UIC again asked ████████████████████████████████████████████
████████████████████████████████







(See Fry Tr., Exhibit C, 70:2-73:1; 79:11-82:24). When counsel for UIC returned to the subject,

Fry was asked the following questions, and gave the following answers:







(Ex. C, 103:13-107:23).

The following day on February 15, 2022, Plaintiff, Veronica Shepp ("Shepp"), was

deposed.  Counsel for UIC again asked ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ and Shepp gave the following answers:



(See Shepp Tr., Exhibit D, 81:7-82:11).  Following Shepp's deposition, Plaintiffs produced 2,767

pages of e-mail correspondence between themselves that was responsive to Schewe's Requests

to Produce and the subject of his prior Motion to Compel.  The following day, on February 16,

2022, counsel for UIC sent correspondence to Plaintiffs' counsel, addressing the claimed "co-

Plaintiff" privilege asserted; UIC further requested Plaintiffs supplement their document

production to include "phone, text message, and social media communications between

Plaintiffs[.]"  (See Letter dated February 16, 2022, Exhibit 4 to Gonzalez Decl., Ex. A).

On February 16, 2022, Defendants deposed Plaintiff, Kathy Lorenz ("Lorenz"), who

testified as follows:





(See Lorenz Tr., Exhibit E, 136:13-137:13).  She was further asked the following questions, and

gave the following answers:



(Ex. E, 138:4-139:7). Thereafter, between February 16 and February 21, 2022, Plaintiffs produced an additional 4,341 pages of documents, comprised of Communications and Works that included hundreds of pages of text messages, which were the subject of Schewe's prior Motion to Compel. Schewe will be required to conduct further depositions of Plaintiffs.[3]

## II. ARGUMENT

### A. *Legal Standards*

Sanctions under Federal Rule of Civil Procedure 37 provide the district court with an effective means of ensuring that litigants will timely comply with discovery orders. Melendez v. Illinois Bell Tel. Co., 79 F.3d 661, 670–71 (7th Cir. 1996). As such, the mere failure to comply with a district court's discovery order is a sufficient basis to impose sanctions under Rule 37(b)(2)(A). e360 Insight, Inc. v. Spamhaus Project, 658 F.3d 637, 642–43 (7th Cir. 2011); see also Societe Internationale Pour Participants Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. at 208, 78 S.Ct. 1087 ("Whatever its reasons, petitioner did not comply with the production order. Such reasons ... can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply.").

A litigant's culpability for failing to comply with a discovery order "determines only which sanctions the court should impose, and not whether any sanctions are appropriate at all." Id. (citing Tamari v. Bache & Co. (Lebanon) S.A.L., 729 F.2d 469, 473 (7th Cir.1984)). Further, simple negligence is a degree of fault sufficient for imposing sanctions. Id. However, sanctions under Rule 37(b) must be proportionally tailored to the severity of the disobedient party's conduct. Nelson v. Schultz, 878 F.3d 236, 239 (7th Cir. 2017); see also Melendez, 79

---

[3] Plaintiffs' counsel have agreed to produce Plaintiffs for further deposition examination on various topics. It is not clear whether they intend to maintain prior objections to exceeding the 7-hour limit under Federal Rule of Civil Procedure 30(d)(1).

F.3d at 672 (District courts may only impose sanctions that are "just," that is, proportionate to the circumstances surrounding a party's failure to comply with discovery rules).

**B.      *Plaintiffs Abjectly Failed to Comply with the Court's Order Following Schewe's Motion to Compel.***

Despite multiple conferences between Schewe and Plaintiffs (both before and after he filed a Motion to Compel), on the specific subject of Plaintiffs' failure to produce text messages, they did not obtain or turn over hundreds of relevant messages[4] when they agreed, and were ordered, to do so.  There can be no doubt Plaintiffs fully understood their obligation because the day after the parties' second conference, they had the following exchange:



---

[4] Notably, many of the text messages contained relevant material on which Plaintiffs would have been examined at their depositions such as ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████



(<u>See</u> Ex. 3 to Gonzalez Decl., Ex. A, at p. 2). Plaintiffs were similarly aware they were required to gather Communications and Works when they first participated in compiling responses to Schewe's Requests to Produce. On October 23, 2021, Plaintiffs stated:

(<u>See</u> Ex. 3 to Gonzalez Decl., Ex A, at p. 1).

With respect to e-mails, Plaintiffs' misrepresentations about the completeness of their production were laid bare when they finally began gathering responsive material. Lorenz stated in a group chat, (<u>See</u> Ex. 3 to Gonzalez Decl., Ex A, at p. 3). They further exhibited a stunning disregard for their discovery obligations when Lorenz stated:

(<u>See</u> Ex. 3 to Gonzalez Decl., Ex A, at p. 4). (emphasis in original). In addition, Shepp, O'Callaghan, and Lorenz had the following conversation:



(See Ex. 3 to Gonzalez Decl., Ex A, at p. 5).

### C. *Plaintiffs' History of Concealing Their Communications with Each Other.*

This is not the first time Plaintiffs have attempted to conceal, or lied about, the extent of their communications with each other when they believed disclosure was adverse to their interests. During the investigation by UIC (which Plaintiffs challenge in this action), all Plaintiffs ███████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████ (See Malone Tr., Exhibit F, 79:6-17; 82:7-83:14).

Lorenz made her position clear, stating: ████████████████████████████

██████████████████ (Ex. C, 67:3-8; and Exhibit 6 thereto, at p. 3). Kirkner said, ████

███████████████████████████████████████████████████ (Ex. B,

142:19-143:14; Ex. 6 to Fry Tr., Ex. C hereto, at p. 4). She even went further when she

outlined her claimed rationale: ██████████████████████████████████

████████ (Ex. 6 to Fry Tr., Ex. C hereto, at p. 3). Of course, this is the same pretext for not

producing further material Plaintiffs invoked during the parties' LR37.2 conference.[5]

---

[5] In addition, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ (Ex. F, 86:11-97:21). In this action, Plaintiffs have only produced a screen shot showing three text messages between Malone and O'Callaghan on the evening of November 2, 2017, but have not produced messages before or after the period shown on the screen shot.

Schewe is not asking that Plaintiffs be punished for conduct outside of this suit.  See generally e360 Insight, Inc., 658 F.3d at 643 (court weighs "all the straws that the recalcitrant party piled on over the course of the lawsuit.").  Nevertheless, their prior behavior bears on the willfulness with which they have acted in these proceedings.  In this respect, their failure to produce texts and e-mails, and their misrepresentations that no more documents existed, is consistent with an earlier stated intention ███████████████████████████████████ Moreover, as they had before, they relied on the same misrepresentation made to UIC, which supports the inference they were motivated by the same intentions.  Similarly, Fry and Kirkner's misleading testimony about ██████████████████████████████ is further evidence they did not merely act negligently, but did so intentionally.  Beyond that, their counsel ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████.  Taken together, these actions can only be seen as a concerted effort to keep the truth from Defendants about the existence of discoverable communications Plaintiffs had not previously produced.

> **D.  Plaintiffs Should be Ordered to pay all Legal Fees Incurred by Both Defendants in Deposing Plaintiffs.**

Federal Rule of Civil Procedure 37(b) provides, in relevant part, as follows:

**(2) *Sanctions Sought in the District Where the Action Is Pending.***

**(A)** *For Not Obeying a Discovery Order.* If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders . . .

**(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b).

### 1. Plaintiffs Violated the Court's Order Dated January 24, 2022, and Must be Sanctioned Unless Their Conduct was Substantially Justified, or if Sanctions Would be Unjust.

Plaintiffs' conduct is similar to that of defendants in DR Distributors, LLC v. 21 Century Smoking, Inc., 513 F. Supp. 3d 839, 955 (N.D. Ill. 2021). There, the court found Rule 37(b) was implicated because defendants failed to comply with an order, requiring them to produce documents four days later. Defendants' lawyer claimed no additional documents existed based on the clients' representations, and defendants produced no additional documents by the deadline. Id. Defendants' claim turned out to be false because they later dumped thousands of pages of emails and Yahoo! chats on plaintiff during summary judgment briefing. Id. at 963.

A sanction is similarly required here unless Plaintiffs were substantially justified in their failure to timely produce relevant documents before their depositions, or if imposing a sanction would be unjust.

### 2. Plaintiffs' Conduct was not Substantially Justified, and the Imposition of Sanctions Against Them Would not be Unjust.

Whether a party's failure to comply with the discovery rules is "substantially justified" is within the broad discretion of the district court. David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003). The same is true for a finding that that the imposition of sanctions would be "unjust." DR Distributors, LLC, 513 F. Supp. 3d at 959. The party facing the sanctions bears the burden to establish that the failure was substantially justified or the imposition of sanctions would be unjust. Id. (citing Salgado by Salgado v. Gen. Motors, Corp., 150 F.3d

735, 742 (7th Cir. 1988)); see also 7 James Wm. Moore et al., Moore's Federal Practice, § 37.97[3] at 37-184 (3d ed. 2019).

The term "substantially justified" means a reasonably debatable contention based on both fact and law. DR Distributors, LLC, 513 F. Supp. 3d at 959 (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)). The "unjust" provision is a "rather flexible catch-all provision," and is essentially a proportionality concept. Id. Therefore, in determining whether sanctions are "unjust," courts may consider the nature of the offending party's discovery failures, and the degree of prejudice and harm visited upon the prevailing party relative to the prevailing party's own abuses of the discovery process (if any). Id. Untimely disclosures and discovery responses and supplements to them are generally not substantially justified or harmless. Id.

As in DR Distributors, Plaintiffs cannot establish any reasonably debatable justification for their actions. They misrepresented that no additional communications existed, and did not timely produce any such material (which also included Works appended to e-mails as attachments), apparently never even looking in the months before the February 1, 2022 deadline.[6] Kirkner specifically admitted ███████████████████████████ ████████████████████████████████████████████████████ (Ex. B, 208:2-3). Fry was even more dishonest when she testified ██████████████████ ████████████████████████████████████████████ ██████████████████████ To the extent Plaintiffs believed they did not possess text messages from old or discarded devices they no longer possessed, or that deleted e-mails were inaccessible to them, their subjective understanding is not a basis for avoiding sanctions. As the court observed

---

[6] One Plaintiff, Shepp, ████████████████████████████████████████████████ ██████████████. However, she, too, did not produce e-mails and Works until after the required deadline.

in <u>DR Distributors, LLC</u>, 513 F. Supp. 3d at 868, a simple internet search would have disclosed that chat history and e-mails were accessible – something Plaintiffs obviously learned eventually when they accessed and produced their Communications.

Because of Plaintiffs' conduct, Defendants did not have all relevant material necessary for a complete examination of Plaintiffs at their depositions.  Further, Defendants had to devote time during the depositions to uncover the existence of the Communications, contend with Plaintiffs' baseless objections, and will have to conduct future depositions.  As to Schewe's conduct in connection with this dispute, his counsel repeatedly tried in multiple conferences to explain Plaintiffs' obligation to diligently search for responsive material.  Plaintiffs met Schewe's genuine efforts to avoid an adversarial discovery dispute with flagrant misrepresentations.  Given the lack of seriousness with which Plaintiffs have approached discovery, their pattern of resisting the disclosure of correspondence they believe is adverse to them, their misleading testimony, and their patent disobedience of the Court's prior order, sanctions are not unjust.

Accordingly, Schewe requests sanctions in the form of a fee award, granting (i) all Defendants the costs associated with all Plaintiffs' past and future deposition sessions, and (ii) the costs incurred by Defendants to obtain and review the late-produced documents, including those associated with Schewe's prior Motion to Compel, this Motion for Sanctions, and the efforts made by UIC.

In addition, Plaintiffs' conduct constitutes cause under Federal Rule of Civil Procedure 30(d)(1) for allowing additional time because they have impeded and delayed Defendants' ability to fairly examine them.  Therefore, Schewe also requests that the 7-hour limit for Plaintiffs'

depositions be extended by 2 hours to permit their full examination on matters raised by the

untimely production of documents.[7]

WHEREFORE, Defendant/Counter-Plaintiff, Paul Schewe, respectfully prays that the

Court enter an Order, granting the following relief:

(A)     Sanctioning Plaintiffs, Erin O'Callaghan, Kathryn Lorenz, Anne Kirkner, Veronica Shepp, Marlee Fry, and Sarah Malone, and ordering them to pay (i) all Defendants the costs associated with all Plaintiffs' past and future deposition sessions, (ii) the costs incurred by Defendants to obtain the late-produced documents, including those associated with Schewe's prior Motion to Compel, this Motion for Sanctions, and efforts by UIC;

(B)     Extending the time permitted for completion of Plaintiffs' depositions by 2 hours; and

(C)     Such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

PAUL SCHEWE


By: /s Elvis D. Gonzalez_____
       One of His Attorneys

Elvis D. Gonzalez (ARDC NO. 6280115)
egonzalez@elvisgonzalezltd.com
ELVIS GONZALEZ, LTD.
233 South Wacker Drive, Suite 6149
Chicago, Illinois 60606
312-558-9779 x101

Nicholas E. Lewis (admitted *Pro Hac Vice*)
nlewis@nmllplaw.com
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
(213) 736-4500
*Counsel for Defendant/Counter-Plaintiff*

---

[7] Defendants have worked cooperatively to allocate appropriate time between themselves during Plaintiffs' depositions, which have been of varying lengths. Not all Plaintiffs will need to be reexamined to the same extent.