**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN O'CALLAGHAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-06271 |
| | ) | |
| UNIVERSITY OF ILLINOIS AT | ) | Hon. John J. Tharp, Jr. |
| CHICAGO, et al. | ) | Hon. M. David Weisman |
| | ) | |
| Defendants. | ) | |

## DEFENDANT THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS'S JOINDER IN MOTION FOR SANCTIONS

Defendant Board of Trustees of the University of Illinois joins Defendant Schewe's motion for sanctions [Docket No. 86]. Defendant Board of Trustees supplements Defendant Schewe's motion with additional context for the Court's consideration, as follows:

The six Plaintiffs in this case were deposed via Zoom the weeks of February 7 and 14, 2022. The afternoon before the deposition of the sixth and final Plaintiff, Plaintiffs produced to Defendants a series of text messages that made clear that Plaintiffs had been communicating with each other—and coaching each other on substantive questions—during their depositions. Most egregiously, two Plaintiffs, Veronica Shepp and Marlee Fry, also appear to have made false statements while under oath.

### 1. Factual Background

Defendant Board of Trustees noticed the remote depositions of the six plaintiffs, to occur via Zoom—Sarah Malone on February 8, Anne Kirkner on February 11, Marlee Fry on February 14, Veronica Shepp on February 15, Katherine Lorenz on February 16, and Erin O'Callaghan on February 18. During Sarah Malone's deposition and then continuing through the rest of Plaintiffs'

depositions, Plaintiffs' counsel instructed Plaintiffs not to answer questions about their communications with each other, claiming a "co-plaintiff privilege." Plaintiffs' counsel refused to allow Plaintiffs to answer even basic questions about whether and when communications occurred, and who participated, even though Defendant Board of Trustees' counsel repeatedly clarified that counsel was not seeking substance about any communications between Plaintiffs and their counsel. Some of these exchanges are detailed at length in Schewe's motion, so Defendant Board of Trustees does not repeat them here. Defendant Board of Trustees' counsel corresponded with Plaintiffs' counsel about this issue, which is also detailed in Schewe's motion.

On February 17, 2022, Plaintiffs produced documents to Defendants, including a series of text messages sent on February 8, 9, 11, 14, 15, and 16—all days that Plaintiffs were being deposed. Plaintiffs produced these text messages mid-afternoon on February 17, after five depositions had already been completed and the day before the final Plaintiff's deposition (Erin O'Callaghan) was scheduled.

These text messages show that all six of the Plaintiffs were communicating via text message *during* their own depositions, regarding the substance of their testimony. As an example, during Veronica Shepp's February 15, 2022 deposition, Shepp consulted with O'Callaghan and Kirkner on topics that she was being questioned about, to determine what her answers should be. The following messages refer to UIC professors and personnel at UIC's Office for Access and Equity, all of whom are relevant in one way or another to Plaintiffs' Title IX claims and this lawsuit and were at issue during Plaintiffs' depositions:

**Ex. A** at O'Callaghan008836 (Feb. 15, 2022 (no timestamp on message), day of Shepp deposition).

*Shepp*: Dr. Bird was never interviewed by Title IX, right? It was Danielle sharing about her story?
*Kirkner*: Yes. And she shared a few things with me during a conversation.
*O'Callaghan*: Yup.
**Ex. A** at O'Callaghan008839 (Feb. 15, 2022 (no timestamp on message), day of Shepp deposition).

*Shepp*: Did any true love recuse herself
*Shepp*: Was that her
*O'Callaghan*: No
*O'Callaghan*: Caryn Bills did
*O'Callaghan*: But then still talked to me after
*Shepp*: Oh right okay
**Ex. A** at O'Callaghan008845 (Feb. 15, 2022 (no timestamp on message), day of Shepp deposition).

*Shepp*: We are on break now until 2pm
*Shepp*: What was the prof name in our dept that is no longer there but did immigration related research?
[…]
*Kirkner*: Helena […]
*Shepp*: Yes!! I could not for the life of me remember
**Ex. A** at O'Callaghan008855 (Feb. 15, 2022 (no timestamp on message), day of Shepp deposition).

These messages relate to specific questions and topics that Shepp was being questioned about, under oath, during the day she was testifying.

The same thing occurred the next day, during Plaintiff Katherine Lorenz's deposition. For example:



**Ex. A** at O'Callaghan008877–78 (Feb. 16, 2022 (no timestamp on message), day of Lorenz deposition).



**Ex. A** O'Callaghan008881 (Feb. 16, 2022, 12:19 p.m., day of Lorenz deposition).

On both days, Plaintiff O'Callaghan offered to be available by text in order to coach Plaintiffs Shepp and Lorenz on their answers. Specifically, on the day of Shepp's deposition, O'Callaghan texted, "I'll be available via text most of the day-if you forget something or need it refreshed I got you," **Ex. A** at O'Callaghan008837, and in response to Shepp's statement that she "do[es]n't remember shit," O'Callaghan responded, "Well I got you if you do need to know!!" **Ex. A** at O'Callaghan008841. Further, the day of Plaintiff Lorenz's deposition, O'Callaghan texted, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" **Ex. A** at O'Callaghan008875–76.

Most shocking are text messages revealing that Plaintiffs Veronica Shepp and Marlee Fry appear to have made false statements during their depositions. As to Shepp, counsel for Defendant Board of Trustees had questioned Shepp concerning a discussion that Shepp had with Plaintiffs O'Callaghan and Lorenz in or around April 2018. This was a critical discussion, because it was the first time that these three Plaintiffs had a discussion with each other about concerns they privately harbored regarding Dr. Paul Schewe. Defendant Board of Trustees' counsel questioned Shepp in detail about the discussion. The following are text messages that Plaintiff Shepp then sent to her co-Plaintiffs during a deposition break:

> *Shepp*: On a 10 min break
> […]
> *Shepp*: We are discussing the title ix shit now
> *Shepp*: I'm just trying to make sure that they don't control the narrative, I'm just sharing as much as I can with every answer [emojis]

4

*Shepp*: Did we have that hot chocolate and talk with you Kathy before or after your going away party? I said before but I wasn't sure

[…]

*O'Callaghan*: Before her going away party

*Shepp*: I don't remember if I went to that or not

*Shepp*: Okay good I remembers right

*Shepp*: That's when you fully disclosed right? I recall that convo

*O'Callaghan*: No I didn't. I later texted Kathy and told her the situation. But I considered doing it in that moment because she mentioned her going away party and maybe Paul should come.

*Shepp*: Oh okay I'm going to clarify. Because we just talked about him being weird.

*O'Callaghan*: Yes

*Shepp*: Yea okay, I'll clarify that then

[…]

*Lorenz*: Was it my going away party or my dissertation party? I was thinking it was my dissertation party but you're right that it may have been my going away

*Lorenz*: I am just so fuzzy on everything!

**Ex. A** at O'Callaghan008847–51 (Feb. 15, 2022 (no timestamp on message), day of Shepp deposition).

Upon consultation with the other Plaintiffs, Shepp decided to "clarify" her testimony on the record.

When counsel for Defendant Board of Trustees asked Shepp if she consulted anything to refresh her recollection, Shepp denied doing so, stating this was just something that she "remembered":

[returning from recess]

Q: Ms. Shepp, you had indicated there was something you wanted to say?

A. Yes. I just wanted to clarify one answer, just because I just want to make sure it's clear, that I had answered about like—I guess it wasn't really lunch. We went and got like hot chocolate, myself, Katherine Lorenz, and Erin O'Callaghan, and we talked pretty extensively at that time about Paul and about the discomfort we, you know, kind of felt and that he was weird and, you know, we sort of disclosed and chatted with each other.

However, I just want to make sure it was clear, Erin did not disclose like at that time. She ended up telling Kathy, I think, a little bit later, might have been through a text message, but it wasn't like right there in that moment.

I know Erin and I had talked after that, and she thought about sharing in that moment but for whatever reason had just sort of decided not to and shared it a little bit later. But I didn't want to make it—I didn't want to insinuate like she had disclosed all of the experience and the events of that evening at that hangout. I just, yeah, wanted to clarify what that actually was.

**Q. Did you review anything to refresh your recollection on that, or that was just a memory that you had from our conversation?**

5

**A. Yeah. It was definitely something that like came up and I was thinking about it that I remembered,** because I remember Erin and I leaving that—leaving the—I forget what the name of the place is, but anyway it's somewhere near UIC, but leaving and talking about like, oh, I thought about telling Kathy and decided not to and then I—yeah, yeah, yeah. I recall that conversation with Erin. So it was—yeah.
(**Ex. B** Shepp. Dep. Tr. at 82:21–84:12) (emphasis added).

Shepp failed to divulge, in response to counsel's direct question, that she "remembered" the

additional facts by consulting with her co-Plaintiffs during the break.

As to Fry, in response to the question of whether she communicated with any of the

Plaintiffs following the end of the Facebook group chat in November 2018, Fry testified:

There is a period when I believe this -- the end of this chat marks -- I mean marks the end of the Facebook thread and our contact from this point wasn't organized in any way and is often not relevant to the case. There's no other -- yeah. Like consolidated document, anything else that would like -- where we were all in a group discussing the case again. I've had, you know, multiple -- these are people that I know. I've had phone calls and things such as that but no clear other means of communication as a group.
(**Ex. C** Fry Dep. Tr. at 72:14–73:1.)

To the contrary, that very morning Fry was in a group text with the other Plaintiffs, and she even

continued to text the group during her deposition:



**Ex. D** at Ex. O'Callaghan008920–21 (Feb. 14, 2022 day of Fry deposition).

While the messages in this group text did not constitute discussions regarding the substance of her

deposition, it is striking that Fry testified denying such communications while simultaneously

engaging in a group-text conversation during her deposition.

6

2.    **Argument**

Under Federal Rule of Civil Procedure 30, depositions "proceed as they would at trial under the Federal Rules of Evidence." Fed. R. Civ. P. 30(c)(1). "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). *See also Royal Maccabees Life Ins. Co. v. Malachinski*, 2001 WL 290308, *11 (N.D. Ill. March 20, 2001) (Rule 30(b)(2) is appropriately used to sanction parties for use of obstructive tactics during depositions).

The conduct here is more serious than that in many of the cases where parties invoke Rule 30(c)(2). Courts often rely on the rule in situations where an attorney defending a deposition makes argumentative or suggestive objections, improperly directs a deponent not to answer, or otherwise engages in colloquy that needlessly prolongs and frustrates deposition testimony. *See, e.g., Medline Indus., Inc. v. Wypetech, LLC*, No. 20 CV 4424, 2020 WL 6343089, at *2, *4 (N.D. Ill. Oct. 29, 2020) (counsel's repeated instruction to witness not to answer was improper, and court awarded as sanctions the fees and costs of motion as well as of taking a second deposition); *Amari Co. v. Burgess*, 2009 WL 1269704, at *1–*3, *5 (N.D. Ill. Apr. 30, 2009) (imposing sanctions where counsel defending deposition "made argumentative and suggestive objections" and instructed the witness not to answer "on grounds unsupported by Rule 30(c)(2)"). Although that happened here during every Plaintiff's deposition, counsel for Defendant Board of Trustees does not seek sanctions on that basis. Defendant Board of Trustees focuses here on the conduct that truly frustrated its effort to secure un-coached, individual testimony from each Plaintiff.

Sanctions are proper when a party has "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th

Cir. 2009) (citation omitted). Sanctions are also proper when a non-complying party has acted unreasonably—even if there was no willfulness or bad faith. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224-25 (7th Cir. 1992) (sanctions appropriate for party who did not act willfully or in bad faith but was still at fault, having acted unreasonably). A district court has discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)); *see also Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 670 (7th Cir. 1996) ("Both the decision to sanction and the choice of an appropriate sanction are reviewed for an abuse of discretion."). Courts are not required to select the "least drastic" or "most reasonable" sanction; rather, courts should impose *just* sanctions, meaning sanctions that are "proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *Melendez v. Ill. Bell. Tel. Co.*, 79, F.3d 661, 672 (7th Cir. 1996) (affirming district court's exclusion of key witness as just sanction); *Marrocco*, 966 F.2d at 225 (rejecting argument that court should have imposed lesser sanction).

A party sitting on the witness stand in a courtroom is not entitled to check in with her co-plaintiffs while answering opposing counsel's questions. Depositions are no different. *Medline Indus., Inc. v. Wypetech, LLC*, No. 20 CV 4424, 2020 WL 6343089, at *3 (N.D. Ill. Oct. 29, 2020) ("a questioning attorney is entitled to have the witness, and the witness alone, answer questions during a deposition") (internal quotation and citation omitted). During breaks in a deposition, it is improper for a deponent to confer with others regarding the substance of the witness's testimony. *Hunter v. WirelessPCS Chicago LLC*, No. 18 CV 980, 2021 WL 4621889, at *5 (N.D. Ill. Oct. 5, 2021) ("During a civil trial, a witness and his lawyer are not permitted to confer at their pleasure during the witness's testimony. The same is true at a deposition."); *LM Ins. Corp. v. ACEO, Inc.*,

275 F.R.D. 490, 491 (N.D. Ill. 2011) (attorneys not permitted to coach witness during testimony); *Wagner v. Dow Jones Co. Inc.*, 1992 WL 209282, *3 (N.D. Ill. Aug. 18, 1992) (coaching a witness during testimony is "dangerous" and "egregious," warranting sanctions).

Here, Plaintiffs themselves frustrated Defendant Board of Trustees' fair examinations by coaching each other during testimony, while they were under oath. It is impossible to recreate what would have occurred during the depositions had Plaintiffs testified solely according to their own memories, without poisoning each other's testimony. As bad as the coaching was here, the apparent false statements are what has prompted Defendant Board of Trustees to join Defendant Schewe's motion. "Toleration of perjury is unseemly—it undermines and dishonors the legal system, and undermines and dishonors the courts, themselves." *Dotson v. Bravo*, 202 F.R.D. 559, 570–71 (N.D. Ill. 2001), *aff'd*, 321 F.3d 663 (7th Cir. 2003) (dismissing action as sanction for perjury).

As a reasonable and just sanction, Defendant Board of Trustees asks this Court to order each Plaintiff to bear Defendant Board of Trustees' fees and costs for their depositions and for bringing this motion. If this motion is granted, Defendant Board of Trustees will submit to Plaintiffs' counsel and the Court a summary of the fees and costs associated with each deposition and bringing this motion.

Dated:  March 18, 2022

By: /s/ *Julie B. Porter*
Julie B. Porter (IL 6243787)
Kathleen Hill
Sarah L. Bakker
Salvatore Prescott Porter & Porter, PLLC
1010 Davis Street
Evanston, IL 60201
P: (312) 283-5711
F: (312) 724-8353
porter@spplaw.com
hill@spplaw.com
bakker@spplaw.com
*Attorneys for Defendant The Board of Trustees of the University of Illinois*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  March 18, 2022                                                   /s/ Sarah L. Bakker

# EXHIBIT A

+1 (330) 635-6033

And I'll be available via text most of the day–if you forget something or need it refreshed I got you

I have to go to the dentist today, so stupid

https://twitter.com/demianbulwa/status/1493361763286282243?s=10

I tweeted that!

+1 (330) 635-6033

You did?? Omg okay let me go look

Hahahaha

+1 (330) 635-6033

Dude the case COULD NOT BE CLEARER TO ABOLISH THESE

Or at least offer many other things first?

+1 (330) 635-6033

Or like, maybe just let people get free healthcare without the invasive exam?

But VAW has a new article out that says dna evidence helps advance sexual assault cases

"DNA evidence contributes to case progression but also is a result of it" I don't think I understand that statement. From the abstract.

+1 (330) 635-6033

Shut the fuck uppppp I'm sick of it

Can you send me that article?

I guess saying DNA evidence may have correlational not causal relationship to case progression?

O'CALLAGHAN 008837Yeah

Thanks!

Ugh whatever. How's using maxqda going? Anything interesting??

YES

I coded everything but need to go back and recode a few things with new codes I developed while coding

Lots of foster kids disclosed to adults who did nothing for them and actively made it worse

+1 (330) 635-6033

Adults are CANCELLED

Say "code" five times fast

A LOT of 911 calls and active rescues for youth in terrible situations. So fuck the police but also some of these cases were like locked in basements or hotel rooms or dumped in alleys and didn't know where they were

And they needed immediate help

I think there were 30 in a sample of 140. That's high.

+1 (661) 808-5889

Ugh yes when police are the only option then people have to rely on them even we know they aren't helpful

I see that in my data too

Yeah I mean who else is going to do this? And what are the chances a young person knows about an alternative resource? Just awful.

At the moment

+1 (661) 808-5889

Yep exactly

There is also something to say about youth who were fucked over by the cops or other authorities and even if their situation is dire still don't want to call them for help.

So I'll talk about that too. Foster care is awful though and I would never want anyone I care about to go into that system.

+1 (330) 635-6033

Yes yes and yes

But I was so stuck trying to do this in excel and am ZIPPING along with this software

+1 (330) 635-6033

Yassss ZIPPPPPP

+1 (661) 808-5889

Dr. Bird was never interviewed by Title Ix, right? It was Danielle sharing about her story?

Yes. And she shared a few things with me during a conversation.

+1 (330) 635-6033

Yup

+1 (661) 808-5889

Okay

+1 (330) 635-6033

Also Anne I think that abstract is saying that dna evidence is also found because a case progresses-like they will actually test the kit if the case proceeds

So dna evidence is correlated with case progression, but also exists because a case has proceeded

+1 (419) 349-5674

Just catching up now that I'm awake. Good luck today Veronica!!!

Yes! I read the article and it seems like that is more related to having a prosecutor that will move the case forward AND test the evidence, at which point it will more likely result in conviction

Like at the end of the day you still
Rely on prosecutors. Then at the end they talk about

O'CALLAGHAN 008839

being worried the dna evidence is like expected and so cases without it will be at a disadvantage

+1 (330) 635-6033

And their big answer is to "train prosecutors". It's becoming the new "train cops". Like they know this–they just do not care!

I know. Also how realistic is it for every rape kit to go through this process? I think at the very least there needs to be a serious recalibration of sending SO MANY victims to get kits if only so many are used in this manner.

There's got to be a way right.

Our court system can't handle all these cases. It's designed for plea bargains.

+1 (330) 635-6033

Well and why do people even get kits? I think it's a misconception that most want it to proceed through the cj system. I think actually most people want to confirm that they were assaulted.

+1 (661) 808-5889

Ugh I feel so sick

+1 (330) 635-6033

Oh no veronica

Can we do anything?

+1 (419) 349-5674

You got this!! It'll be over soon. Just think of how fucking angry you are that we are even in this situation. But I also totally understand — I am on anxious spiral and it's not even my turn yet.

+1 (661) 808-5889

No it will be okay, I'm just nervous.

I feel like so much of my memory of that time is just fucking gone

O'CALLAGHAN 008840

Hang in there. It's awful and they want it to feel awful. I

tell the exact same way.

+1 (661) 808-5889

Like I genuinely could not tell you what classes I took

+1 (330) 635-6033

And I think it's okay to say that-trauma impacts peoples memory. We have years of research

Second year of grad school we took all the same classes so I got you

It's not reasonable to be expected to know all of that. Just remember that.

+1 (330) 635-6033

Fall semester we took matoesian again and epidemiology of violence

Haha unless you're a Capricorn freak who holds the universe in her mind for all of us.

Doing the lords work

+1 (330) 635-6033

Spring semester we took feminist methods and stats 1

+1 (661) 808-5889

I mean I don't necessarily think I need to know what classes we took haha point is that I don't remember shit

+1 (330) 635-6033

Well I got you if you do need to know!!

It's helps me that I had to review the title ix documents so many fucking times during that process. They are nearly all seared into my memory

My only advice is don't reach or attempt to remember something. Because they might be about to hit you with a document that could be different than what you come up with.

O'CALLAGHAN 008841

+1 (419) 349-5674

+1 (661) 808-5889

It's really good actually. From new wave!

1 Reply

+1 (661) 808-5889

Did any true love recuse herself

Was that her

+1 (330) 635-6033

No

Caryn bills did

But then still talked to me after

+1 (661) 808-5889

Oh right okay

Deep cuts

It's really good actually. From new wave!

1 Reply

Did they wash their floors yet?

+1 (330) 635-6033

Lol!!!! Do they have bad floors? I'm dying

I really was. Which makes a lot of this worse to me

2 Replies

Totally. That made it appalling to me too! If I thought you were a baby, what were you to him?

Their floors are filthy

I really was. Which makes a lot of this worse to me

O'CALLAGHAN 008845



+1 (330) 635-6033

shudder at this thought

+1 (330) 635-6033



Lol their floors seem fine to me, but I'm not the best judge of this because my floors are also bad



I love you all

Their floors were awful. Lord knows I never pick up a mop myself. But I'm also not charging $6 for a latte

CALLAGHAN 008846

Awww


+1 (330) 635-6033

I am dead at this

I totally forgot that our side gets to depose people too


LOLOL

Oh we do? Damn ok. Who we deposin


+1 (330) 635-6033

I'm not sure but Paul for sure!

Yes. Michael F Diaz?

+1 (330) 635-6033


"

1 Reply

Omg probably

And Caryn bills


And all these other FAILURES

+1 (661) 808-5889

I'm so tired haha

Already

On a 10 min break




I think I'm doing okay? It's so hard to know

+1 (330) 635-6033

Ugh I'm sorry

I'm sure you ate!!


Are*

O'CALLAGHAN 008847

+1 (661) 808-5889

Need more coffee

+1 (330) 635-6033

You got this

Good! I bet you are. Keep it up!

+1 (330) 635-6033

Hopefully it won't be too long for you. I just keep hoping they will only take like 30 mins lol

Oh no. Mine was 10-5

+1 (661) 808-5889



We are discussing the title ix shit now

I'm just trying to make sure that they don't control the narrative, I'm just sharing as much as I can with every answer 😭🙏

Did we have that hot chocolate and talk with you Kathy before or after your going away party? I said before but I wasn't sure

Hahaha

That's a good strategy! I feel like they got me talking too much and sharing my opinions which is my WEAKNESS

+1 (330) 635-6033

Before her going away party

+1 (661) 808-5889

I don't remember if I went to that or not

Okay good I remembers right

That's when you fully disclosed right? I recall that convo

O'CALLAGHAN 008848

+1 (330) 635-6033



No I didn't. I later texted Kathy and told her the situation. But I considered doing it in that moment because she mentioned her going away party and maybe Paul should come

**1 Reply**

+1 (661) 808-5889



Oh okay I'm going to clarify. Because we just talked about him being weird

+1 (330) 635-6033



Yes

+1 (661) 808-5889



Yeah okay, I'll clarify that then

+1 (330) 635-6033



I considered saying something, but then just didn't so I texted later

+1 (661) 808-5889



Okay gotcha I was thinking that might have been the case but my answer wasn't clear.

+1 (330) 635-6033



No cavities, everyone celebrate. This plus my hair appointment Thursday I'm really getting tuned up before these depos

Alright!



+1 (330) 635-6033



I plan to watch the office deposition episode on Friday morning





+1 (330) 635-6033

Dude uic is trash honestly

I don't even care that they will know how often I talk shit about them!

+1 (330) 635-6033

And like I'll fully admit we talk every day on multiple platforms! What do you fuckers wanna know?? Honestly

1 Reply
+1 (419) 349-5674

No I didn't. I later texted Kathy and told her the situation. But I considered doing it in that moment because she mentioned her going away party and maybe Paul should come

1 Reply

O'CALLAGHAN 008850

+1 (419) 349-5674

Was it my going away party or my dissertation party? I was thinking it was my dissertation party but you're right that it may have been my going away

+1 (419) 349-5674

am just so fuzzy on everything!

Is there a way to extract messages from an entire phone conversation?

+1 (330) 635-6033

It was your going away party-Paul came your dissertation party

+1 (419) 349-5674

Ohhh gotcha

+1 (330) 635-6033

I'm starting with my uic email now-compiling those isn't hard, and then I will wait on more info with other stuff

+1 (419) 349-5674

Yeah and he was a creep so then I didn't invite him to the other one but at that point I didn't know what he did do you  until we had that conversation

I feel like we already shared all the email communications and the Facebook message?

+1 (330) 635-6033

No they want literally everything

Like not even about the case

+1 (419) 349-5674

But we don't talk over email?

+1 (330) 635-6033

We do every day

I have several emails with all of us lol

Like this could literally be about anything

O'CALLAGHAN 008851

Aha

+1 (419) 349-5674



 

+1 (661) 808-5889

We are on break now until 2pm

What is the prof name in our dept that is no longer there but did immigration related research?

Jorge was cool with her?

I'm totally blanking

Also I have no time to do all of that… like, I literally cannot

Helena!

Helena something

+1 (661) 808-5889

Yes!! I could not for the life of me remember

I was her TA for a while

+1 (661) 808-5889

I'm just so tired. 





+1 (661) 808-5889

O'CALLAGHAN 008855

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIN O'CALLAGHAN, VERONICA      )
SHEPP, KATHERINE LORENZ,        )
ANNE KIRKNER, SARAH MALONE,     )
and MARLEE FRY,                 ) No. 19-cv-06271
                                )
              Plaintiffs,       ) Hon. John J. Tharp,
                                ) Jr.
      vs.                       )
                                ) Hon. M. David
UNIVERSITY OF ILLINOIS AT       ) Weisman
CHICAGO, PAUL SCHEWE,           ) (Magistrate)
MICHAEL DIAZ, AMY TRUELOVE,     )
JOHN/JANE DOES 1-100,           )
                                )
              Defendants.       )


DEPOSITION OF VERONICA SHEPP

APPEARING REMOTELY FROM

COOK COUNTY, ILLINOIS


February 15, 2022

10:02 a.m. CST


REPORTED BY:

Suzanne Thalji

CSR No. 084-002337

APPEARING REMOTELY FROM COOK COUNTY, ILLINOIS

Page 2

```
 1       REMOTE APPEARANCES:
 2         FRADIN LAW
             BY MR. MICHAEL LOUIS FRADIN
 3           8401 Crawford Avenue, Suite 104
             Skokie, Illinois  60076
 4           847.644.3425
             mike@fradinlaw.com
 5                 and
           SAEED & LITTLE LLP
 6         BY MS. ANNEMARIE ALONSO
             18 West Vermont Street
 7           Indianapolis, Indiana
             317.721.9214
 8           annie@sllawfirm.com
                   on behalf of the Plaintiffs;
 9
           SALVATORE PRESCOTT PORTER & PORTER PLLC
10         BY MS. SARAH L. BAKKER
             MS. JULIE B. PORTER
11           MS. KATHLEEN A. HILL
             1010 Davis Street
12           Evanston, Illinois  60201
             312.283.5711
13           bakker@sppplaw.com
             porter@sppplaw.com
14           hill@spppplaw.com
                   on behalf of the Defendant
15                 The Board of Trustees of the
                   University of Illinois;
16
           ELVIS GONZALEZ, LTD.
17         BY MR. ELVIS D. GONZALEZ
             233 South Wacker Drive, Suite 6149
18           Chicago, Illinois  60606
             312.558.9779 ext. 101
19           egonzalez@elvisgonzalezltd.com
                   on behalf of the Defendant
20                 Paul Schewe.
21       ALSO REMOTELY PRESENT:
22         MS. MEGAN J. STOLL
           MS. MARGARET WOULFE
23         MR. PAUL SCHEWE
24
```

Page 3

```
 1                 I N D E X
 2       WITNESS
 3         VERONICA SHEPP
 4       EXAMINED BY                          PAGE
 5         MS. BAKKER                            5
 6         MR. GONZALEZ                        154
 7
 8
 9                 E X H I B I T S
10       SHEPP DEPOSITION EXHIBITS            PAGE
11         Exhibit 1                           14
           Exhibit 2                           22
12         Exhibit 3                           38
           Exhibit 4                           56
13         Exhibit 5                           60
           Exhibit 6                           62
14         Exhibit 7                           65
           Exhibit 8                           72
15         Exhibit 9                           23
           Exhibit 10                          77
16         Exhibit 11                          88
           Exhibit 12                          98
17         Exhibit 13                          98
           Exhibit 14                          99
18         Exhibit 15                         100
           Exhibit 16                         135
19         Exhibit 17                         138
           Exhibit 18                         146
20         Exhibit 19                          57
           Exhibit 20                         101
21         Exhibit 52 (not attached)         191
           Exhibit 55 (not attached)         200
22
23
24
```

Page 4

```
 1       REPORTED REMOTELY FROM COOK COUNTY, ILLINOIS
 2       TUESDAY, FEBRUARY 15, 2022, 10:02 A.M. CST
 3            THE REPORTER:  The attorneys
 4       participating in this deposition acknowledge that
 5       I am not physically present in the deposition room
 6       and that I will be reporting this deposition
 7       remotely, pursuant to Federal Rule of Civil
 8       Procedure 29.  They further acknowledge that, in
 9       lieu of an oath administered in person, the
10       witness will verbally declare her testimony in
11       this matter is under penalty of perjury.  The
12       parties and their counsel consent to this
13       arrangement and waive any objections to this
14       manner of reporting.
15            Please indicate your agreement by
16       stating your name and your agreement on the
17       record.
18            MS. BAKKER:  Sarah Bakker on behalf of
19       defendant The Board of Trustees of the University
20       of Illinois, we consent.
21            MR. FRADIN:  And Michael Fradin for the
22       plaintiff and we consent.
23            MR. GONZALEZ:  Elvis Gonzalez for
24       defendant Paul Schewe and we consent.
```

Page 5

```
 1            (Witness sworn.)
 2            MS. BAKKER:  I would like to identify
 3       us for the record.  I am Sarah Bakker.  I am
 4       joined by my colleague Julie Porter and two of our
 5       clients, Margaret Woulfe and Megan Stoll, on
 6       behalf of defendant The Board of Trustees of the
 7       University of Illinois.
 8            I would like to state for the
 9       record that no recording of this deposition is
10       permitted other than by the court reporter and
11       that this deposition is confidential pursuant to
12       the confidentiality order that has been entered in
13       this case.
14            VERONICA SHEPP,
15       having been first duly sworn, was examined and
16       testified as follows:
17            DIRECT EXAMINATION
18       BY MS. BAKKER:
19         Q.   Good morning, Ms. Shepp.  My name is
20       Sarah Bakker, and as I said, I represent the
21       defendant The Board of Trustees of the University
22       of Illinois.  Have you ever been deposed before?
23         A.   No, I have not.
24         Q.   Okay.  I am going to go over some
```

VERONICA SHEPP
February 15, 2022

Page 82

1  with Marlee is pretty infrequent, just because we
2  are both super busy and her being so far away and
3  we are not currently collaborating professionally,
4  which is part of the reason why I'm communicating
5  so much with the others.  So, yeah, I don't talk
6  with Marlee as much, but I am still in
7  communication with her occasionally.
8       Q.    Are there any women who are plaintiffs
9  in this litigation who you do not email with?
10      A.    I mean, no, not -- yeah, no.  Still
11  communicate via email with all of them.
12           MR. FRADIN:  I am going to object to
13      that to the extent that you are calling for
14      coplaintiff or common interest privilege and
15      potentially also attorney-client privilege in
16      this line of questioning.
17           MS. BAKKER:  Can we go off the record
18      for a second?
19           MR. FRADIN:  Sure.
20                (Recess taken.)
21  BY MS. BAKKER:
22      Q.    Ms. Shepp, you had indicated there was
23  something you wanted to say?
24      A.    Yes.  I just wanted to clarify one

Page 83

1  answer, just because I just want to make sure it's
2  clear, that I had answered about like -- I guess
3  it wasn't really lunch.  We went and got like hot
4  chocolate, myself, Katherine Lorenz, and Erin
5  O'Callaghan, and we talked pretty extensively at
6  that time about Paul and about the discomfort we,
7  you know, kind of felt and that he was weird and,
8  you know, we sort of disclosed and chatted with
9  each other.
10          However, I just want to make sure it
11  was clear, Erin did not disclose like at that
12  time.  She ended up telling Kathy, I think, a
13  little bit later, might have been through a text
14  message, but it wasn't like right there in that
15  moment.
16          I know Erin and I had talked after
17  that, and she thought about sharing in that moment
18  but for whatever reason had just sort of decided
19  not to and shared it a little bit later.  But I
20  didn't want to make it -- I didn't want to
21  insinuate like she had disclosed all of the
22  experience and the events of that evening at that
23  hangout.  I just, yeah, wanted to clarify what
24  that actually was.

Page 84

1       Q.    Did you review anything to refresh your
2  recollection on that, or that was just a memory
3  that you had from our conversation?
4       A.    Yeah.  It was definitely something that
5  like came up and I was thinking about it that I
6  remembered, because I remember Erin and I leaving
7  that -- leaving the -- I forget what the name of
8  the place is, but anyway it's somewhere near UIC,
9  but leaving and talking about like, oh, I thought
10  about telling Kathy and decided not to and then
11  I -- yeah, yeah, yeah.  I recall that conversation
12  with Erin.  So it was -- yeah.
13      Q.    That was sometime in spring 2018?
14      A.    Correct, yes.
15      Q.    Okay.  Ms. Shepp, after you submitted
16  your report to the Office for Access and Equity in
17  August 2018, you did not see Paul Schewe again,
18  correct?
19      A.    Correct.
20      Q.    He was no longer your advisor?
21      A.    Correct.  I mean, yeah.  He wasn't -- I
22  didn't necessarily have like a formal statement
23  that he was no longer my advisor, but at that
24  point I had moved on and been working with Sarah

Page 85

1  Ullman, so, yeah.
2       Q.    You have not spoken on the phone with
3  Paul Schewe since before August 2018?
4       A.    Correct.
5       Q.    You have not communicated with him by
6  email since before August 2018?
7       A.    Yeah.  I don't believe so.
8       Q.    You haven't communicated with him in
9  any way at all since before August 2018, correct?
10      A.    Correct, yeah.
11      Q.    You are aware that Dr. Schewe was
12  placed on administrative leave immediately after
13  you filed your OAE report?
14      A.    Yes.
15      Q.    He did not teach any classes following
16  your report to OAE?
17      A.    Correct.
18      Q.    During or after the OAE investigation,
19  did Dr. Schewe ever threaten you?
20      A.    No, not -- I think it's difficult
21  because I think in some ways I definitely felt
22  threatened by him, but did I receive a threat from
23  him?  No.
24      Q.    And as you just said, you didn't

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIN O'CALLAGHAN, VERONICA      )
SHEPP, KATHERINE LORENZ,        )
ANNE KIRKNER, SARAH MALONE,     )
and MARLEE FRY,                 ) No. 19-cv-06271
                                )
            Plaintiffs,         ) Hon. John J. Tharp,
                                ) Jr.
    vs.                         )
                                ) Hon. M. David
UNIVERSITY OF ILLINOIS AT       ) Weisman
CHICAGO, PAUL SCHEWE,           ) (Magistrate)
MICHAEL DIAZ, AMY TRUELOVE,     )
JOHN/JANE DOES 1-100,           )
                                )
            Defendants.         )


DEPOSITION OF MARLEE FRY

APPEARING REMOTELY FROM

ALAMEDA COUNTY, CALIFORNIA


February 14, 2022

10:01 a.m. CST


REPORTED BY:

Suzanne Thalji

CSR No. 084-002337

APPEARING REMOTELY FROM COOK COUNTY, ILLINOIS

Page 2

```
 1        REMOTE APPEARANCES:
 2            FRADIN LAW
             BY MR. MICHAEL LOUIS FRADIN
 3            8401 Crawford Avenue, Suite 104
             Skokie, Illinois  60076
 4            847.644.3425
             mike@fradinlaw.com
 5                and
             SAEED & LITTLE LLP
 6            BY MS. ANNEMARIE ALONSO
             18 West Vermont Street
 7            Indianapolis, Indiana
             317.721.9214
 8            annie@sllawfirm.com
 9                on behalf of the Plaintiffs;
10            SALVATORE PRESCOTT PORTER & PORTER PLLC
             BY MS. SARAH L. BAKKER
11                MS. JULIE B. PORTER
             1010 Davis Street
12            Evanston, Illinois  60201
             312.283.5711
13            bakker@sppplaw.com
             porter@sppplaw.com
14
                 on behalf of the Defendant
15               The Board of Trustees of the
                 University of Illinois;
16
             ELVIS GONZALEZ, LTD.
17            BY MR. ELVIS D. GONZALEZ
             70 West Madison Street, Suite 1050
18            Chicago, Illinois  60602
             312.558.9779
19            egonzalez@elvisgonzalezltd.com
20                on behalf of the Defendant
                 Paul Schewe.
21
         ALSO REMOTELY PRESENT:
22
             MS. MEGAN J. STOLL
23            MS. MARGARET WOULFE
             MR. PAUL SCHEWE
24
```

Page 3

```
 1                  I N D E X
 2    WITNESS
 3        MARLEE FRY
 4    EXAMINED BY                          PAGE
 5        MS. BAKKER                         6
 6        MR. GONZALEZ                     110
 7              E X H I B I T S
 8    FRY DEPOSITION EXHIBITS             PAGE
 9        Exhibit 1                        19
10        Exhibit 2                        26
11        Exhibit 3                        41
12        Exhibit 4                        49
13        Exhibit 5                        63
14        Exhibit 6                        37
15        Exhibit 7                        90
16        Exhibit 8                        58
17        Exhibit 9                        47
18        Exhibit 10                       61
19
20
21
22
23
24
```

Page 4

```
 1    REPORTED REMOTELY FROM COOK COUNTY, ILLINOIS
 2     MONDAY, FEBRUARY 14, 2022, 10:01 AM CST
 3        THE REPORTER:  The attorneys
 4    participating in this deposition acknowledge that
 5    I am not physically present in the deposition room
 6    and that I will be reporting this deposition
 7    remotely, pursuant to Federal Rule of Civil
 8    Procedure 29.  They further acknowledge that, in
 9    lieu of an oath administered in person, the
10    witness will verbally declare her testimony in
11    this matter is under penalty of perjury.  The
12    parties and their counsel consent to this
13    arrangement and waive any objections to this
14    manner of reporting.
15            Please indicate your agreement by
16    stating your name and your agreement on the
17    record.
18            MR. FRADIN:  This is Michael Fradin,
19    attorney for the plaintiff, and we agree to the
20    oath being taken remotely.
21            MS. BAKKER:  This is Sarah Bakker,
22    counsel for defendant The Board of Trustees of the
23    University of Illinois, and on behalf of our
24    client, we agree.
```

Page 5

```
 1            MR. GONZALEZ:  This is Elvis Gonzalez
 2    on behalf of defendant Paul Schewe, and we also
 3    consent to remote administration of the oath.
 4            (Witness sworn.)
 5            MS. BAKKER:  Madam Court Reporter, do
 6    you need us to identify everyone who is listening
 7    for the record?
 8            THE REPORTER:  It's up to you.
 9            MS. BAKKER:  All right.  I will go
10    ahead.  My name is Sarah Bakker.  I'm joined by my
11    colleague Julie Porter as well as our clients,
12    Margaret Woulfe and Megan Stoll, on behalf of
13    defendant The Board of Trustees of the University
14    of Illinois.
15            MR. GONZALEZ:  My name is Elvis
16    Gonzalez, and I represent Dr. Paul Schewe who is
17    also here present.
18            MR. FRADIN:  This is Michael Fradin,
19    and I'm here for the plaintiffs, and my co-counsel
20    is also here, Annie Alonso.
21
22
23
24
```

MARLEE   FRY
February 14, 2022

Page 70

1  BY MS. BAKKER:
2      Q.    Did you continue to communicate with
3  the other plaintiffs in this case through other
4  means of communication?
5          MR. FRADIN:  I am going to object to
6      the time frame is ambiguous and also to the
7      extent you are requesting coplaintiff
8      protected communications.
9          MS. BAKKER:  You can answer my question
10     if you understood, Ms. Fry.
11         MR. FRADIN:  She can't answer it to the
12     extent that you are requesting privileged
13     communications, but she can answer it to the
14     point of -- before I was retained to
15     represent the plaintiffs.
16         MS. BAKKER:  Ms. Fry, you can answer my
17     question.
18         MR. FRADIN:  Well, no.  Did you hear
19     what I just said, Sarah?  I said you can
20     answer it to the extent that you are not
21     requesting attorney-client privileged
22     communications, that you're not requesting
23     communications involving coplaintiffs once
24     counsel was retained.  So if you want to

Page 71

1      rephrase it, yes, but that's the extent to
2      which she can answer the question.  So don't
3      just say again you can answer the question
4      because, no, that's not what I'm saying.
5  BY MS. BAKKER:
6      Q.    Ms. Fry, as I said earlier, I am not
7  asking for any privileged information, any
8  communications that you have had with your counsel
9  at all in any of my questions today.  I am
10 asking --
11         MR. FRADIN:  You are also not asking
12     about questions between coplaintiff -- she
13     keeps avoiding that.  During the last
14     deposition they said it wasn't the law.  We
15     actually looked up the cases.  It is the law.
16     She completely avoided that issue in her
17     questions.
18         So what I'm telling you, Marlee,
19     is that to the extent you are going to answer
20     these questions, it is not involving
21     attorney-client communications, not involving
22     communications with the coplaintiffs once I
23     was retained.  So she can ask you before then
24     but not after that.

Page 72

1  BY MS. BAKKER:
2      Q.    Ms. Fry, taking your attorney's
3  instruction to you into account, did you continue
4  to communicate with the plaintiffs in this case
5  after November 20, 2018, through a different means
6  of communication?
7          MR. FRADIN:  And she still didn't
8      phrase it correct.  So what she is trying to
9      ask, Marlee, is the time from before I was
10     retained from the time the Facebook chat
11     ended.  So if you are able to answer that,
12     you can, but that's the time frame in which
13     we are speaking of.
14     A.    There is a period when I believe
15 this -- the end of this chat marks -- I mean it
16 marks the end of the Facebook thread, and our
17 contact from this point wasn't organized in any
18 way and is often not relevant to the case.
19 There's no other, yeah, like consolidated
20 document, anything else that would like -- where
21 we were all in a group discussing the case again.
22         I've had, you know, multiple -- these
23 are people that I know.  I've had phone calls and
24 things such as that but no clear other means of

Page 73

1  communication as a group.
2          MS. BAKKER:  Let's go ahead and take a
3      15-minute break.  Is that okay with everyone?
4          MR. FRADIN:  Okay.
5          MS. BAKKER:  So coming back at 11:50
6      Central time.
7          MR. GONZALEZ:  Great.  Thanks.
8          (Recess taken.)
9  BY MS. BAKKER:
10     Q.    Ms. Fry, I am going to show you Exhibit
11 6 to your deposition again.  Just a few more
12 questions about this exhibit.  Can you see that
13 exhibit in front of you?
14     A.    Yes.
15     Q.    Okay.  On August 28, 2018, you wrote,
16 "Okay I just got a similar email from Michael.  I
17 was thinking I should reach out to (I forget her
18 name) the other student in my report and the only
19 problem is that much of my report is about
20 witnessing Paul's friends making comments about
21 her appearance.  So it's more like I was a witness
22 to her own incident that she hasn't reported.  But
23 I guess I could reach out and try to just
24 introduce the idea of what we've done.  I just

# EXHIBIT D